UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**GREG QUINLAN, Ex-Gay Health
Provider Center For Garden State
Families, JOAN GRACE HARLEY,
Ex-Trans turned Reverend, CHRIS
SEVIER ESQ., De Facto Attorneys
General, RICH PENKOSKI, Pastor
WARRIORS FOR CHRIST
(Plaintiffs)**

**V.**

**U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, MICHAEL R.
POMPEO, in his official capacity as the
head of the State Department, ALEX M.
AZAR II, in his official capacity as
Secretary of U.S. Department of Health
and Human Services,  ROGER
SEVERINO, in his official capacity as
Director, Office for Civil Rights, U.S.
Department of Health and Human
Services,  SEEMA VERMA, in her official
capacity as Administrator for the Centers
for Medicare and Medicaid Services, U.S.
Department of Health and Human
Services, WILLIAM BARR, in his official
capacity as Attorney General Of The U.S.,
BETSY DEVOS, in her official capacity as
the Secretary of the Department of
Education, VICTORIA A. LIPNIC, in her
official capacity as the Commissioner of
the U.S. Equal Employment Opportunity
Commission
(Defendant)**

Case: 1:20−cv−02261
Assigned To : Chutkan, Tanya S.
Assign. Date : 8/13/2020
Description: TRO/PI (D−DECK)

**ORIGINAL COMPLAINT**

## I.    INTRODUCTION

1.  Greg Quinlan, an ex-gay registered nurse, who founded the Center For Garden State Families, (2) Joan Grace Harley, a black female ex-trans, who became a Reverend and activist in the greater DC area;  (3) Chris Sevier Esq., former Judge Advocate General,  who founded De Facto Attorneys General DC division, and (4) Pastor Rich Penkoski, a persecuted pastor who founded Warriors for Christ DC chapter, bring this lawsuit pursuant to 42 U.S.C. § 1983 and 5 U.S.C. § 706(a) for violations under the First Amendment Establishment Clause of the United States Constitution for failing the prongs of the Lemon Test and on other grounds. The Plaintiffs seek a preliminary and permanent injunction that requires:

(a) the Health and Human Service Department (HHS) be permanently enjoined from reinstating the 2016 Obama Rule[1] or from ever re-including "sexual orientation" or "gender identity" in its Rules and Regulations;[2]

(b) HHS to modify the existing 2020 Trump Rule, [3] clarifying that the Establishment Clause of the First Amendment requires "sex" to be interpreted to mean "a person who is

---

[1] On May 18, 2016, HHS published a final rule implementing Section 1557. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (formerly codified at 45 C.F.R. pt. 92) (referred to in this case as the "2016 Obama Rule")
[2] The Plaintiffs seek declaratory judgment that the 2020 Trump Rule that replaced the 2016 Obama Rule on June 12, 2020 is Constitutional under the Establishment Clause of the First Amendment.   The 2020 Trump Rule is neutral and secular and does not violate the Establishment Clause of the First Amendment, whereas the 2016 Obama Rule is controversial and non-secular and violates the Establishment Clause from every angle. The Plaintiffs seek a permanent injunction that prohibits the Defendants from ever reverting back to the 2016 Obama Rule - which HHS is threatening to do in the wake of the decision in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (June 15, 2020).
[3] On June 14, 2019, the Trump Administration issued a Notice of Proposed Rulemaking, proposing to "make substantial revisions" to the 2016 Final Rule, including repealing certain provisions. See Notice of Proposed Rulemaking, Nondiscrimination in Health and Health Education Programs or Activities, 84 Fed. Reg. 27,846, 27,848 (June 14, 2019) ("2020 Trump Rule")

born with male anatomy and a person who is born with female anatomy" because any other interpretation would lack a primary secular purpose;

(c) the U.S. Equal Employment Opportunity Commission to not enforce parts of Title VII and the Department of Education to not enforce part of IX where the term "sex" is used beause it includes non-secular concepts of "sexual orientation" and "gender identity," serving to excessively entangle the government with the religion of Secular Humanism;[4].

(d) the Department of Justice (DOJ) not allow itself or any other Federal or State agency to enforce any Federal or State policy that includes, respects, or promotes the terms "sexual orientation" or "gender identity" because those policies put the religion of Secular Humanism over non-religion.

(e) the State Department and U.S. Ambassador to Russia to remove the LGBTQ cult's flag on public display from the outside of the U.S. Embassy in Moscow so as to no longer convey to the Nation and the world that the favored religion of the United States is the religion of Secular Humanism, as advocated by the LGBTQ cult.

2. First, the enforcement of Title VII, Title III, Title IX (after it was magically discovered by the Supreme Court that the term "sex" means "sexual orientation" or "gender identity"), second, HHS's immediate threat to reinstate the 2016 Obama Rule and failure to clarify the 2020 Trump Rule, and third, the U.S. Embassy in Russia's decision to permanently display the LGBTQ flag on the front of the Embassy are all policy decisions that are

---

[4] See *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (2020).

unconstitutional in their making and in their enforcement because they fail the three prongs of

the *Lemon* Test [5] and, therefore, violate the Establishment Clause of the First Amendment by:

(a) constituting a sham that lacks a primary secular purpose and placing the religion of

Secular Humanism over non-religion;

(b) cultivating an indefensible legal weapons against non-observers of the religion of

Secular Humanism, as advocated by the LGBTQ cult; and

(c) serving to excessively entangle the government with the religion of Secular

Humanism, as advocated by the LGBTQ cult.

## II.     THE NATURE OF THE CASE AS IT RELATES TO STARE DECISIS

3. This action will serve to overrule *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), *United*

*States v. Windsor*, 133 S.Ct. 2675 (2013), and *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020

WL 3146686 (2020) in the restoration of the rule of law.  *Obergefell, Windsor,* and *Bostock*

amount to the greatest religious sham since the inception of American jurisprudence and cause

the judicial branch to "serve as a threat to American Democracy" at the hands of unelected

"black robed Supremacists."[6] The Supreme Court in *Obergefell, Windsor,* and *Bostock*

monkeyed with the Equal Protection and Due Process Clauses of the Fourteenth and Fifth

Amendments in a manner that threatened the integrity of the race-based civil rights movement.

The decisions must be relegated to the trash heap of history for the same reasons that the

---

[5] To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant
to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing,
endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion." See
*Lemon v. Kurtzman*, 403 U.S. 602 (1971). Government action "violates the Establishment Clause
if it fails to satisfy any of these prongs." *Edwards v. Aguillard,* 482 U.S. 578, 583 (1987);
*Agostini v. Felton*, 521 U.S. 203, 218 (1997).
[6] (See Scalia's dissent in *Obergefell*).

decision in *Dred Scott v. Sandford*, 60 U.S. 393 (1857) was. Just as *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954) overruled *Plessy v. Ferguson*, 163 U.S. 537 (1896), this case must serve to overrule *Obergefell, Windsor,* and *Bostock* because they were decided on the wrong Constitutional narrative - representing a licentious legal fiction. The Equal Protection Clause and Substantive Due process clause have nothing to do with LGBTQ issues any more so than they have anything to do with Baptist issues. The Establishment Clause balanced with the Free Exercise Clause have exclusive jurisdiction over informing all state and Federal actors how to respond and react to the LGBTQ cult. "Stare Decisis" does not keep *Obergefell, Bostock,* and *Windsor* from being overruled because Supreme Court held that "questions which merely lurk in the record, neither brought to attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc*. 543 U.S. 157 (2004). The Establishment Clause claims were "lurking" in the record but undecided in *Obergefell, Windsor,* and *Bostock*. All three of those cases involved Constitutional interpretation, and "[Stare Decisis] is at its weakest when [the courts] interpret the Constitution because [their] interpretation can be altered only by constitutional amendment or by overruling [their] prior decisions." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996); *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 94, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of stare decisis...has only a limited application in the field of constitutional law"). *Obergefell* did not lead to a landrush on gay marriage, it led to Drag Queen Story Time at public libraries, which targets children with licentious religious ideology. The decision in *Bostock* did not lead to equality, it has led to parts of Title VII, Title VIII, and Title IX lacking a secular purpose because

now the Titles are promoting LGBTQ orthdoxy through the organs of government in violation of the Establishment Clause.

## III.    NATURE OF THE CASE IN GENERAL

4.  Justice Scalia stated that the most under-developed area of the law is Establishment Clause jurisprudence.  He was correct.  This action will help develop First Amendment Establishment Clause jurisprudence in a manner that restores our culture of rights and stops our Nation's march towards sedition and civil war. As lobbyists, the Plaintiffs are shaping the trajectory of the First Amendment regularly through the legislative branch; however, it is also one of the duties of the judicial branch to determine the trajectory of the First Amendment and serve as a check and balance on itself when fictitious legal narratives have been used to entangle our government with a disfavored religious ideology that is nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the Nation.

5. The First Amendment Establishment Clause states "[The Government] shall make no law respecting an establishment of religion." U.S. Const. Amend. I. [7]

6.  All religion amounts to is a set of unproven answers to the greater questions like why are we here, what gives us identity, what should we be doing as humans, and what happens after death.  (Decl. Coalition of Multi-Racial Pastors ¶ 2)

7.  The evidence shows that the Establishment Clause of the First Amendment was not merely designed to stop the government from excessively promoting the edicts of

---

[7] The Establishment Clause applies just as equally to Executive Branch expenditures as it does to legislative exercises of the Taxing and Spending Power, to permit Executive Branch use of appropriated funds to accomplish an unconstitutional end would mean that "Establishment Clause protection would melt away." (Souter, J., dissenting). *Hein v. Freedom From Religion Foundation*, 551 U.S. 587, 640 (2007) (Souter, J., dissenting).

institutionalized religions. It was also designed - if not more so - to prohibit the government from excessively promoting the doctrines of non-institutionalized religions, like Secular Humanism [8] as advocated by the LGBTQ cult.

8. Decades before the egotistical judicial putsch unfolded in *Obergefell, Windsor,* and *Bostock*, the Supreme Court of the United States had already resolved that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause.[9]

_____

[8] Secular Humanism is also referred to as postmodern individualistic moral relativism, expressive individualism, or the religion of wokeness.
https://podcasts.apple.com/us/podcast/ep-1024-the-religion-of-wokeness/id1047335260?i=10004 76823217

[9]      The United States Supreme Court already found that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488, n. 11 (1961), stating "among religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism, and others. See *Washington Ethical Society v. District of Columbia,* 249 F.2d 127, 101 U.S. App. D.C. 371 (D.C. Cir 1957); *Fellowship of Humanity v. County of Alameda*, 153 Cal.App.2d 673, 315 P.2d 394 (1957); II Encyclopaedia of the Social Sciences 293; 4 Encyclopaedia Britannica (1957 ed.) 325-327; 21 id., at 797; Archer, Faiths Men Live By (2d ed. revised by Purinton), 120-138, 254-313; 1961 World Almanac 695, 712; Year Book of American Churches for 1961, at 29, 47."
     See also - *School District of A Bington Township, Pa. v. Schempp,* 374 U.S. 203, 225 (1963)("[T]he State may not establish a "religion of secularism" in the sense of affirmatively opposing or showing hostility to religion, thus "preferring those who believe in no religion over those who do believe.")
     See also - the decision in *United States v. Seeger,* 380 US 163, 166 (1965) defined religion as all sincere beliefs "based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent." Thus, according to *Seeger,* "religion" includes atheists and agnostics, as well as adherents to traditional theism. The logical conclusion from the Seeger decision is that "[a]bsolute vertical disbelief in the traditional sense - disbelief in God - is irrelevant" to First Amendment considerations. *Id. See generally* Bowser, *Delimiting Religion in the Constitution: A Classification Problem,* 11 VAL. U.L. REV. 163 (1977); Boyan, *Defining Religion in Operational and Institutional Terms,* 116 U. PA. L. REv. 479 (1968); Clancy and Weiss, The Conscientious Objector Exemption: *Problems in Conceptual Clarity and Constitutional Considerations,* 17 ME.L. REV. 479 (1968); Clark, *Guidelines for the Free Exercise Clause,* 83 HARV. L. REV. 327 (1969); Killilea, *Standards for Expanding Freedom of Conscience,* 34 U. Prrr. L. REv. 531 (1973); Rabin, *When is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise,* 51 CORNELL L.Q. 231

9.  Likewise, just about all of the Federal courts of appeal have held that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause.[10]

10.  According to the testimonies of ex-gays, ex-transvestites, medical experts, persecuted Christians, and licensed ministers, the LGBTQ cult is a denominational sect that is inseparably linked to the religion of Secular Humanism.  (See Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20).[11]

11. According to the testimonies of ex-gays, ex-transvestites, medical experts, persecuted Christians, and licensed ministers, the concepts of "sexual orientation" and "gender identity," having nothing to do with "immutability" and "genetics" (like race does). Id.  Instead, "sexual orientation," "homosexuality," "transgenderism," and "gender identity" are orthodoxies,

---

(1966); Comment, *Defining Religion: Of God, the Constitution and the* D.A.R., 32 U. CHI. L. REv. 533 (1965).

    See also - in *Welsh v. United States*, 398 U.S. 333 (1970), the Supreme Court extended the *Seeger* rationale and held "that purely ethical and moral considerations were religious." The Supreme Court further blurred the distinction between religion and morality by holding that a sincere person may be denied an exemption only if his belief or belief system does "not rest upon and invade ethical or religious principles, but instead rests solely upon considerations of policy, pragmatism or expediency." *Id.* at 342-43.

[10]  Most of the Federal Court of appeals have also already found that Secular Humanism is a religion for the purpose of the First Amendment Establishment Clause in cases such as *Malnak v. Yogi*, 592 F.2d 197, 200-15 (3d Cir.1979); *Theriault v. Silber*, 547 F.2d 1279, 1281 (5th Cir. 1977); *Thomas v. Review Bd.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003); *Real Alternatives, Inc. v. Se'y Dep 't of Health & Human Ser*, 150 F. Supp. 3d 419, 2017 WL3324690 (3d Cir. Aug. 4, 2017); and *Wells v. City and County of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001); *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943);  (See also the Decl. of Multi-Racial Pastors ¶¶ 2-3).

[11] The LGBTQ cult has zero defense to that other than a stream of irrational emotional appeals that are demonstrably removed from reality.

doctrines, ideologies, and dogmas that are inseparably linked to the religion of Secular Humanism, as advocated by the LGBTQ cult. Id.[12]

12.  The LGBTQ cult meets the legal definition of a religion because it is a "closed system" that is "organized, full, and provides a comprehensive code by which individuals may guide their daily activities." [13] LGBTQ cult's creed and speech codes, which include "sexual orientation," "gender identity," and other doctrines, represent "ultimate concern," "sincere belief," and a "non-theistic belief system" in a manner that makes it a denominational sect of the religion of Secular Humanism from a legal and factual perspective.[14] Because "sexual

---

[12] This is not a case where the Plaintiffs are trying to prove or disprove whether a gay gene exists. They do not have to. The Plaintiffs are arguing that it is not proven one way or another and is therefore a matter of faith, which means that the Establishment Clause and Free Exercise Clause have exclusive jurisdiction over these matters, which means that *Bostock, Obergefell,* and *Windsor* were all decided on the wrong Constitutional legal basis.

[13] In See *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,*150F. Supp. 3d 419, 872 (3d Cir. Aug. 4, 2017)., the court stated: "we detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry,* 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities."

[14] See P. TILLICH, DYNAMICS OF FAITH 1-2 (1958) (hereinafter referred to as TILLICH). Tillich states: The name of this infinite and inexhaustible depth and ground of all being is God. That depth is what God means. And if that word has not much meaning for you, translate it, and speak of the depth of your life, of the source of your being, of your ultimate concern, of what you take seriously without any reservation. Perhaps, in order to do so, you must forget everything traditional that you have learned about God, perhaps even the word itself. For if you know that God means depth, you known much about him. You cannot then call yourself an atheist or unbeliever. For you cannot think or say: Life has no depth! Life is shallow. Being itself is surface only. If you could say this in complete seriousness, you would be an atheist; but otherwise you are not. He who knows about depth knows about God. P. TILLICH, THE SHAKING OF THE FOUNDATIONS 63-64 (1972). (Decl. Coalition of Multi-Racial Pastors ¶ 2).

orientation" and "gender identity" are religious orthodoxies, it means that the government cannot recognize, respect, or promote them either directly or indirectly.

13.   Humanist Manifestos I and II spelled out that Secular Humanism will be expressed in "widely varying ways." [15] The LGBTQ cult is a religion because core doctrines, like "gender identity" theory and "sexual orientation" orthodoxy, are nothing more than a series of unproven faith-based assumptions and naked assertions that are implicitly religious and inseparably linked to the religion of Secular Humanism. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20).

14.   The LGBTQ cult is highly funded and organized with its own mantras and spiritual take on reality.  Id.  Instead of having a cross, the ten commandments, or the star and crescent, the LGBTQ cult has a rainbow colored flag to convey its private moral code, which promotes licentiousness and is nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the Nation.[16]

15. The LGBTQ cult's creed overlaps with another denominational sect of the religion of Secular Humanism, referred to as the Black Lives Matter Global Network (BLM), and  the LGBQT creed and the BLM creed both undermine compelling government interests. [17]

---

[15] Humanist Manifestos I and II, supra note 176 at 13-15.

[16]  The Statement Department and the US Ambassador to Russia knew this was true when they permitted the Gay Pride Flag displayed on the outside of the embassy building to send a coercive religious message to the international community and served to embarrass the United States as a whole.

[17] The LGBTQ cult's creed overlaps with the BLM cult's creed, which can be viewed here - https://blacklivesmatter.com/what-we-believe/.   Both the LGBTQ cult and the BLM have been gathering together to recite incantations and hosting public ritualistic atonement ceremonies. Here is some of the creed pulled from the BLM website that overlap directly with the liturgical orthodoxy of the LGBTQ cult:

  (1) We make space for transgender brothers and sisters to participate and lead.
  (2)  We disrupt the Western-prescribed nuclear family structure requirement by

16. Just because LGBTQ cult denies that it is a religion does not mean that it is not. Just because the LGBTQ cult says that its quest to entangle our government with their narrow ideology is based on equality does not mean that it is. There is nothing "secular" about LGBTQ Secular Humanism.[18]  (Decl. Coalition of Multi-Racial Pastors ¶ 2-4)

17. The goal of the LGBTQ cult is to entangle our government with their religion so that it becomes the official, irrefutable, and supreme religion of the United States in the off chance that its followers feel less ashamed and inadequate about putting into practice beliefs that naturally lead to feelings of shame and inadequacy. Supporters of the LGBTQ cult seek to entangle our government with their religious ideology in order to feel morally superior to those who find it to be self-evidently immoral and inconsistent with the givenness of the human design.

18. The LGBTQ cult's efforts to entangle our government with their immoral religious ideology undermines compelling National interest by eroding community standards of decency.[19] Their plight is not about "tolerance," it is about "dominance." The government's endorsement of

---

supporting each other as extended families and "villages" that collectively care for one another, especially our children, to the degree that mothers, parents, and children are comfortable.

(3) We are self-reflexive and do the work required to dismantle cisgender privilege and uplift Black trans folk, especially Black trans women who continue to be disproportionately impacted by trans-antagonistic violence.

(4) We foster a queer-affirming network. When we gather, we do so with the intention of freeing ourselves from the tight grip of heteronormative thinking, or rather, the belief that all in the world are heterosexual.

(5) We are guided by the fact that all Black lives matter, regardless of actual or perceived sexual identity, gender identity, gender expression, economic status, ability, disability, religious beliefs or disbeliefs, immigration status, or location.

[18] Black Lives Matter is about spreading marxism. Black Lives Matter is not about black lives mattering.

[19] Our Constitution was made only for a moral and religious people. It is wholly inadequate to the government of any other.

LGBTQ ideology has led to the social marginalization and violent oppression of citizens - like the Plaintiffs - who believe that LGBTQ ideology is self-evidently immoral and subversive to human flourishing.

19.  In view of the testimonials from medical experts, ex-gays, ex-trans, and religious experts, it takes a huge amount of religious faith to believe that (1) a person is born gay, that (2) a person can come out of an invisible closet and be baptized homosexual with immutable traits that calls for special treatment,[20] that (3) "sexual orientation" orthodoxy and "gender identity" ideology are "medical science" (especially when  disinterested medical science says otherwise). [21]  All of these kinds of statements amount to a series of unproven faith based assumptions and naked assertions that are implicitly religious and advance anti-theism in an effort to justify practices that are inconsistent with the peace and safety of the Nation.  For millennia, LGBTQ practices have amounted to anti-theism and salacious sexual deviance that erode community standards of decency.  Even President Putin gets that LGBTQ ideology is the mirror opposite of Christianity, self-evidently immoral, and subversive to human flourishing.

_____

[20] The Plaintiffs use the term "closeted" in their complaint in their effort to challenge the 2020 Corrected Rule, as if it was a non-secular and neutral concept.  If there was nothing inherently immoral about LGBTQ practices and ideology then remaining "closeted" would not be a concern. (Complaint at 194) But LGBTQ ideology and practices are self-evidently shameful, like pedophilia, polygamy, zoophilia, and rape are. The Plaintiffs are peddling religious theories that are camouflage as a request for equality. The goal of the Plaintiffs is to entangle our government with the religion of Secular Humanism so that they feel less ashamed and inadequate about a life-style that naturally produces feelings of shame and inadequacy.

[21] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.  It takes an enormous amount of religious faith and a lot of intellectual squinting to actually believe that "[self-identified t]ransgender people have a gender identity that differs from the sex assigned to them at birth.  A person's gender identity is a core, defining trait fundamental to a person's sense of self and personhood," as the plaintiffs in *Whitman* asserted. See *Whitman-Walker Clinic v. HHS*, 1:20-cv-01630-JEB (D.D.C. June 22, 2020)  (DE #1 ¶ 226).

20.   The Plaintiffs stipulate that adults can believe in LGBTQ doctrine if they want under the Free Exercise Clause, [22] but the Establishment Clause requires that all aspects of the State and Federal government disentangle itself with the LGBTQ cult completely and to stop promoting their narrow and exclusive religious worldview through the organs of government. This means the following policies must go, any policy that:

(a)  Respects or recognizes any form of non-secular parody marriage that does not involve a man and a woman;

(b)  Authorizes the State to appropriate taxpayer-funded benefits of any kind to individuals who entered into a non-secular parody marriage that does not involve a man and a woman or who seek to have the state respect their non-secular self-asserted sex-based identity narrative to be respected;

(c)  Permits counties to issue marriage licenses to individuals who seek legal recognition and respect of a non-secular parody marriage that does not involve a man and a woman;

_____

[22]  The Plaintiffs stipulate that anyone in the country has the fundamental right to believe in the merits and plausibility of homosexuality pursuant to the Free Exercise Clause of the First Amendment of the United States Constitution. The Plaintiffs stipulate that anyone can freely practice LGBTQ beliefs as long as they do not violate existing State and Federal law. The Plaintiffs acknowledge that the Free Exercise Clause is not absolute and that LGBTQ Secular Humanism is disfavored because it promotes licentiousness and is nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the state. The Plaintiffs also recognize that under *Reynolds v. United States*, 98 U.S. 145 (1878) the laws of the United States may be predicated off of Christian morality just as the Equal Protection Clause of the Fourteenth Amendment and Declaration of Independence are but that the United States is barred from officially mandating that Christianity is the official religion of the Nation. After all, mandating belief in Christianity would cultivate the very form of legalism that Christ himself was so adamantly opposed to.

(d)  Treats sexual orientation as a suspect class or as a basis of prohibited discrimination under the assumption that sexual orientation is predicated on genetics or immutable characteristics;

(e)  Treats sexual orientation as a suspect class or as a basis of prohibited discrimination under the assumption that non-secular self-asserted sex-based identity narratives, non-secular marriages, or parody marriages are part of American history or heritage or have anything to do with the Substantive Due Process or the Equal Protection Clauses of the Fourteenth Amendment;

(f)  Respects a person's unproven belief that they were born the gender that does not accord with the self-evident biological anatomy that the individual was born with based on the reasonable observer standard;

(g)  Permits the State to appropriate tax dollars to pay for sex reassignment surgery and other non-secular procedures;

(h)  Bans conversion therapy;

(i)  Permits public libraries or public schools or other state actors to partner with non-secular organizations to promote, sponsor, host, favor, or endorse the Drag Queen Story Time or other similarly related Secular Humanist or non-secular programming in a government building, where other religious programming linked to institutionalized religions is also not authorized or permitted;

(j)  Permits a public school from allowing a student who was born as a male to compete in otherwise all-girl sports or that allow a student who was born a female to compete in otherwise all-male sports;

(k)  Permits a biological male to use a restroom or locker room designated for biological females or a biological female to use a restroom or locker room designated for biological males in a government-controlled building;

(l)  Involves a state actor mandating pronoun changes to respect the plausibility of the most recent version of Secular Humanist ideology, especially in public schools;

(m)  Permits a person or parent to change the sex on a birth certificate that does not accord with the self-evident biological anatomy that the person was born with;

(n)  Permits a state actor to display the LGBTQ rainbow-colored flag in a government public setting where it would be unconstitutional for a state actor to display the symbols of other institutionalized religions;

(o)  Permits LGBTQ Secular Humanists being taught in public schools unless the student's parents allow their child to opt-in to such faith-based programming that fall under sex-education;

(p)  Forces any adoption agency to permit individuals who are part of a non-secular parody marriage to adopt a minor child; or

(q)  Condones the use of puberty blockers, especially in regards to minors.

## IV.  A BRIEF TIMELINE OF LEGAL EVENTS LEADING UP TO THIS CASE

21.  Here is a brief legal history leading up to this action:

(a)  From the inception of the country, until the 1940s religion was defined as theism (a belief in God) by the courts of the United States.[23]

---

[23] *Reynolds v. United States*, 98 U.S.145, 166-167 (1878), *Davis v. Beason*, 133 U.S. 333 (1890), *United States v. Macintosh*, 283 U.S. 605 (1931).

(b)  From the 1940s forward, religion has included non-theism and theism for purposes of the First Amendment Establishment Clause.[24]

(c)  In 2013, *United States v. Windsor*, 133 S.Ct. 2675 (2013) was decided which led to the decision in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), which dissenting Judges called an "egotistic...judicial putsch."  Both cases were based on nothing more than emotion and the manipulative misuse of Fourteenth and Fifth Amendments, which caused the government to get entangled with LGBTQ Secular Humanist religion at the expense of the civil rights of all non-observers of the religion of Secular Humanism.[25]

(d)  In 2016, HHS issued Rules and Regulations (referred to here as the "2016 Obama Rule") that included "sexual orientation" and "gender identity" language for the purpose of respecting, promoting, recognizing, favoring, and endorsing LGBTQ Secular Humanist religion through the organs of government.

---

[24] See *Torcaso v. Watkins*, 367 U.S. 488, 495 n. 11 (1961), and *United States v. Seeger*, 380 U.S. 163 (1965).

[25] In the wake of decisions, like in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), there has not been a landrush on gay marriage, there has been a landrush on Christian persecution. ( Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21 ). *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). Moreover, in the wake of *Obergefell* there has not been a landrush to gay marriage, there has been a landrush for devout LGBTQ activists to infiltrate public elementary schools and public libraries for the sole purpose of targeting minors to indoctrinate them to their Secular Humanism religion with the government's official stamp of approval.  The Supreme Court has emphasized that there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," *Lee v. Weisman*, 505 U.S. 577, 592 (1992). The Federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987).

(e) Immediately after the 2016 Obama Rule was published, the court in *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016) enjoined HHS from implementing the rule.

(f) Between June 12, 2020 and June 19, 2020, President Trump authorized HHS to repeal and replace the 2016 Obama Rule with the 2020 Trump Rule - removing references to "sexual orientation" and "gender ideology" in several different regulations to make the policies neutral, non-controversial, and secular.[26] But besides citing the reasoning in *Franciscan Alliance, Inc. v.*

---

[26] **A SUMMARY OF THE HHS CHANGES FROM THE 2016 OBAMA RULE TO THE 2020 TRUMP RULE:** On June 12, 2020, HHS revised a number of non-discrimination provisions in federal regulations that were actually designed to promote LGBTQ orthodoxy through the organs of government and to establish LGBTQ Secular Humanism as the favored religion of the Country. The revision that gets the most attention is perhaps the revision of section 1557 of the Affordable Care Act, which was put in place by the Obama administration, which specifically prohibited gender identity and sexual orientation discrimination in health care but it was really just a non-secular sham. The 2016 Obama Rule also mentioned people who self-identify as non-binary, inter-sex, and transgender. In addition to prohibiting "gender identity" and "sexual orientation" discrimination it provided some protection for self-identitified lesbian, gay, and bi-sexual people against sex stereo typing. The Trump administration repealed certain rules and removed gender identity and sexual orientation controversial language from the guidelines and from at least ten sections of seven other Federal Regulations because their inclusion caused the policy to lack a secular purpose and had the effect of putting the religion of Secular Humanism over non-religion. These regulations covered health care services, insurance, state and federal health care exchanges that were set up under the Affordable Care Act to provide subsidized insurance for people, where they pay out of pocket but there is some kind of government subsidy to help them afford it. Additionally, there were three medicaid provisions governing enrollment, access to services, and cultural competency training that mentioned "sexual orientation" and "gender identity" training that were amended in order to get HHS and the government disentangled with the religion of Secular Humanism as advocated by the LBGTQ church. So on balance, 11 mentions of gender identity and 10 mentions of sexual orientation were taken out of eight Federal Regulations. The Plaintiffs referred to these revised policies as the "2020 Trump Rule" and to the replaced policies as the "2016 Obama Rule." Why did this revision occur? Was the Trump administration trying to be mean to people who thought it was wise to brainwash themselves on the plausibility of LGBTQ ideology? No. The Trump Administration had to change these rules because the Establishment Clause of the First Amendment requires it. The Establishment Clause was supposed to have always barred all aspects of the state and federal government from taking any action that directly or indirectly

*Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016) and arguments raised by county defense counsel in *Bostock*, HHS did not adequately clarify that the Establishment Clause of the First Amendment was the legal bases by which HHS was required to replace HHS to replace the 2016 Obama Rule with the 2020 Trump Rule - leaving HHS vulnerable to litigation for taking action that was arbitrary and capricious.

(g) On June 15, 2020, the Supreme Court rendered a decision in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (June 15, 2020)[27] which built off the prior decisions in *Obergefell* and *Windsor,* cases that were decided on the wrong Constitutional basis that can be overturned because Establishment Clause questions were lurking in the shadows but undecided upon in those controversies that have led to the entanglement of our government with LGBTQ Secular Humanism.[28]

---

respects, recognizes, endorse, or favors LGBTQ ideology. However, HHS failed to adequately cite the Establishment Clause as the basis for the rule change.

[27] **A Summary Of The Bostock Holding:** The Supreme Court in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (June 15, 2020) held that Title VII of the Civil Rights Act applies to discrimination for gender identity and sexual orientation through the term "sex." The prohibition against sex discrimination in the work place, which is found in Title VII, applies to gender identity and sexual orientation, as applied to the word "sex." Any discrimination based on gender identity and sexual orientation that is now actionable as a rule across the country. Title VIII Fair House Act and Title IX protects against the discrimination on the basis of "sex." Credit and lending statute prohibits discrimination on the basis of "sex." According to the erroneous decision in *Bostock* all of these laws must now encompass gender identity and sexual orientation discrimination, which has the effect of establishing the religion of Secular Humanism, as advocated by the LGBTQ cult as the National religion. The Plaintiffs in this case are asking that the government be enjoined from enforcing Title VII, VIII and, Title IX the until the term "sex" is either (1) replaced with the secular terms "a person who is born with male anatomy and a person who is born with female anatomy" or (2) is interpreted by the government to only mean "a person who is born with male anatomy and a person who is born with female anatomy," and not "sexual orientation" or "gender identity."

[28] The Establishment Clause balanced with the Free Exercise Clause of the First Amendment of the United States Constitution have exclusive jurisdiction over informing all Federal and State agencies how to respond to self-asserted sex-based identity narratives that are questionably real, questionably moral, and have a tendency to erode community standards of decency and promote

(h) On June 22, 2020, the first of two lawsuits was filed against HHS to have the 2020 Trump Rule declared unconstitutional and void in order to have the 2016 Obama Rule revived. See *Whitman-Walker Clinic v. HHS*, 1:20-cv-01630-JEB (D.D.C. June 22, 2020). (See Exhibit)

(i) On July 9, 2020, the Plaintiffs filed an *Amicus* brief in *Whitman*, which the court, chaired by an Obama appointee, denied leave to have the brief docketed, and he set the matter for an expedited trial.

(j) The Plaintiffs filed this action on July 14, 2020 seeking the exact opposite relief sought by the plaintiffs in *Whitman-Walker Clinic v. HHS*, 1:20-cv-01630-JEB (D.D.C. June 22, 2020). (See Exhibits). In this case the Plaintiffs are seeking three things. First, not only wanting the 2020 Trump Rule to stay in place, they want HHS to clarify the 2020 Trump Rule so that it is clear that the Establishment Clause of the First Amendment is the legal basis for the Rule change. This clarification will prevent the revival of the 2016 Obama Rule no matter who is in the White House. Second, the Plaintiffs seek to enjoin the other Federal agencies from enforcing statutes that involve a non-secular interpretation of the term "sex," which includes Titles VII, VIII, and IX. Third, this action includes a demand that the State Department force the Ambassador to Russia to remove the LGBTQ flag from the front of the U.S. Embassy in Moscow so that it is clear to all Americans and the rest of the world that Secular Humanism, as advocated by the LGBTQ cult, is not the favored religion of the United States.

## V. JURISDICTION AND VENUE

---

licentiousness. The Courts in *Windsor, Obergefell,* and *Bostock* should have dismissed the cases for lack of subject matter jurisdiction. The plaintiffs in those cases based their entire case on a stream of emotional appeals. There is a long standing jurisprudence that emotional appeals - even seemingly good ones - cannot be used to usurp the Establishment Clause of the First Amendment. See *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004).

22.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and United States Constitution; 28 U.S.C. § 1346, as a civil action against the United States founded upon the Constitution, an Act of Congress, or an executive regulation; and 28 U.S.C. § 1361, as an action to compel an officer or agency to perform a duty owed to the Plaintiffs.

23.  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

24.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), & (e)(1) because at least one Plaintiff resides in this judicial district, a substantial part of the events or omissions giving rise to this action occurred in this district, the injuries to the plaintiffs are most felt in this district, and each Defendant is an agency of the United States or an officer of the United States sued in their official capacity.

## VI.  PARTIES

### A.  Plaintiffs

25. THINGS THAT THE PLAINTIFFS HAVE IN COMMON: There is a laundry list of relevant facts that the Plaintiffs have in common.  First, the Plaintiffs are all American taxpayers who pay every form of tax imaginable in Florida and elsewhere, including sales tax and/or property tax and/or income tax, etc.  Second, the Plaintiffs all provide a range of services to individuals who used to be part of the LGBTQ cult, who have left it behind and converted to a neutral, non-controversial, and secular identity narrative that accords with the givenness of their

nature.[29]  Third, the Plaintiffs are Christians and Christian missionaries, who either do go on

overseas mission trips or are intending to.[30]   None of the Plaintiffs want the government to

impose Christianity on the citizenry. Yet, none of the Plaintiffs want the government to continue

to coercively impose Secular Humanism on them either.   Fourth, all of the Plaintiffs have been

severely persecuted, harassed, threatened, libeled, slandered, canceled, oppressed, marginalized,

antagonized, demonized, and injured in the wake of the government's endorsement of the

LGBTQ cult, simply because the Plaintiffs believe that LGBTQ ideoloy is licentious and

immoral.[31]  Fifth, all of the Plaintiffs have separately challenged the government's promotion of

LGBTQ Secular Humanism on a number of different battle fronts and have been persecuted for

doing so.  Sixth, the Plaintiffs are committed to zealously defending the race-based civil rights

movement led by Pastor Martin Luther King Jr that the LGBTQ cult seeks to hijack and exploit.

---

[29] It's the Plaintiffs mission individually and collectively to build a world in which people who
have left the dangerous, desensitizing, dehumanizing, depersonalizing, destructive, dishonest
LGBTQ cult behind can thrive as healthy, equal, and complete members of society. It is the
collective mission of the Plaintiffs to spread the message that a person can join the LGBTQ cult
if they want to take that path, but that the government is lying by spreading the LGBTQ's gospel
narrative that "once gay always gay."
[30] The Plaintiffs do not take a scalpel to the Bible and cut out the parts they do not feel are
culturally relevant. The Plaintiffs are Constitutional originalists. The Plaintiffs believe that
without faith, there is no basis for morality, and without morality there is no basis for law. The
Plaintiffs believe that America is unofficially a Christian Nation insofar as the laws of the United
States may parallel Christian concepts of right and wrong, but the Government cannot mandate
belief in Christianity. The Plaintiffs do not believe that all moral doctrines are equal and that all
moral doctrines lead to human flourishing.
[31] When a LGBTQ cult member says that "love is love" what they really mean is that they are ok
with government assets being used to crush anyone who dares to disagree with their religious
worldview on sex, faith, marriage, and morality. Such a position is unloving by definition. The
idea that the LGBGT cult is about love is sham. The LGBTQ cult has taught us that people who
are intolerant of intolerant people are intolerant; people who are judgmental against judgmental
people are judgmental.

[32] Seventh, the Plaintiffs are undertaking colorable efforts to start a health provider and/or insurance group, Born Again Healthcare,[33] that will be subjected to HHS's rules and regulations in this district. The goal of this health care provider service is to provide to persecuted Christians, ex-gays, and ex-trans. The Plaintiffs' conscience stops them from moving forward on their aspirations to form a health provider/insurance group until it is fully resolved whether HHS will keep the 2020 Trump Rule in place with modest clarification requested and whether HHS will forever be enjoined from including language that pays respect to "sexual orientation" orthodoxy or "gender identity" ideology in its regulations. The Plaintiffs' economic goals are stifled in this way. If an employee of Born Again Healthcare chose to practice LGBTQ ideology, the Plaintiffs would fire them. If they were to do so they could be subjected to liability under Title VII for discrimination on the basis of sex, under the *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (2020) interpretation.

26. Reverend Joan Grace Harley is a black American female, who self-identified and lived as a transvestite male for 18 years, during which time she was a militant LGBTQ activist. She had a conversion experience and left the LGBTQ cult and became a Reverend, which she has served as for over 20 years. She attended Calvary Bible Institute. She received a diploma and certificate in biblical studies and completed Biblical Counseling Foundation training program in counseling, and completed the school of Ministry Training Program with the Evangelical Cathedral School of ministry.  She lives approximately 30 minutes away from this Court. She

---

[32] The evidence shows that for any person to pretend that the phony gay-civil-rights plight is equal to the race-based-civil rights plight, whereas the race-based-civil right plight was actually predicated on immutability and genetics, is guilty of an act of racial animis and racism in-kind that manages to be sexually exploitative, emotionally exploitative, and intellectually exploitative.
[33] www.bornagainhealthcare.com

founded One Solitary Voice Ministries and provides a variety of health services to ex-trans and ex-gays. She now actively opposes the LGBTQ cult's and as a former member, she has direct knowledge of just how toxic, manipulative, indecent, and dangerous it is. She grew up in DC and has paid taxes there for decades. Her sworn statement is attached, which gives a more robust view of her direct experiences as a former insider and leader of the LGBTQ cult. She can testify how dangerous it is. Ever since the *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) decision, she has felt like a voiceless non-existent citizen.

27. Greg Quinlan was an LGBTQ activist for a decade before having a conversation experience and leaving the LGBTQ cult and lifestyle behind. He is a registered nurse and the founder for the Center of Garden State Families. He is regularly in the District working on the Hill on legislative affairs to protect Christians from persecution by the LGBTQ cult. He can testify how dangerous it is. Ever since the *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) decision, he has felt like a voiceless non-existent citizen.

28. Lieutenant Chris Sevier is a former Judge Advocate General and a combat infantry Officer who was trained by the United States the Rule Of Law Mission, specializing in Constitutional law. He is the founder of the DC division of De Facto Attorneys General. He has been operating in the District persistently since 2013. Plaintiff Sevier goes on mission trips to Eastern Europe and is planning a mission trip to Moscow for him and his co-Plaintiffs. Most recently Plaintiff was victimized by a record label in the United Kingdom, AnjunaBeats founded by the group Above And Beyond, simply for pushing legislation that requires the government in the United States to stop violating the Establishment Clause by entangling itself with the LGBTQ

church.[34]  Anjunabeats is entangled with the LGBTQ cult who undertook self-help actions that caused contracts to be cancelled that economically damaged Plaintiff Sevier. If the government was not entangled with the LGBTQ cult, this injury would not have come about. The fight has gotten so ugly that Plaintiff Sevier is working with U.S. Citizenship and Immigration Services to ban anyone affiliated with Anjunabeats from entering in to the United States as a result of their malicious efforts with the LGBTQ cult to meddle in Constitutional affairs in the United States.

29. <u>Pastor Rich Penkoski</u> is the founder of the Warriors For Christ DC Chapter. His declaration is attached.  Pastor Penkoski and his family have been viciously persecuted, stalked, harangued because they believe that the government should only legally recognize man-woman marriage.

### B. Defendants

30. <u>The United States Department of Health and Human Services</u> is a cabinet department of the federal government, headquartered in the District of Columbia. HHS promulgated the Revised Rule and is responsible for its enforcement. HHS is an "agency" within the meaning of the APA. 5 U.S.C. § 551(1). [35]

---

[34] https://dancingastronaut.com/2018/09/grum-announces-second-album-never-alone/

[35]     Defendant Alex M. Azar, II is the Secretary of HHS. He is sued in his official capacity. Secretary Azar is responsible for all aspects of the operation and management of HHS, including the adoption, administration, and enforcement of the Revised Rule, and with implementing and fulfilling HHS's duties under the United States Constitution and the APA. Alex can be served here:   200 Independence Avenue SW Washington, D.C. 20201.
     Defendant Roger Severino is the Director of the Office of Civil Rights ("OCR") at HHS. He is sued in his official capacity. Director Severino is responsible for all aspects of the operation and management of OCR, including the adoption, administration, and enforcement. Roger can be served here: 200 Independence Avenue, SW Room 509F, HHH Building Washington, D.C. 2020.
     Defendant Seema Verma is the Administrator for the Centers for Medicare and Medicaid Services ("CMS"), a component of HHS. She is sued in her official capacity. Administrator Verma is responsible for all aspects of the operation and management of CMS, including the

31. <u>The Honorable William Barr</u> is the Attorney General of the United States. He is the

chief law enforcement officer of the Nation. His Department of Justice is responsible for

ensuring that all state and federal agencies are obeying the United States Constitution.

32. <u>Betsy Devos</u> is the Secretary of education.  She is responsible for enforcing Title IX.

[36]  <u>Victoria A. Lipnic</u> is the Commissioner of the U.S. Equal Employment Opportunity

Commission. She is in charge of enforcing Title VII.[37]

34. <u>Mike Pomeo</u> is the head of the State department. The State Department oversees and

is responsible for the actions of the U.S. Embassy in Moscow.

## VIII.  FACTS

### A.  Facts Surrounding The Need To Enjoin The Equal Employment Opportunity Commission,  Department Of Education, And The Department Of Justice From Enforcing Parts Of Title VII, Title VIII, And Title Ix That Reference The Term "Sex"

35. There is a saying the Military, give your enemy enough rope, and they will hang

themselves.

36. In a single instance, parts of Titles VII, VIII, and IX became unconstitutional

because six Supreme Court justices magically discovered that the term "sex" means "sexual

---

adoption, administration, and enforcement of the Revised Rule as it pertains to regulations relating to the establishment and operation of ACA exchanges; in the marketing and design practices of health insurance issuers under the ACA; in the administration, marketing, and enrollment practices of Qualified Health Plans ("QHPs") under the ACA; in beneficiary enrollment and the promotion and delivery of services under Medicaid; and in the delivery of services under the Programs for All-Inclusive Care for the Elderly ("PACE"). Seema Verma can be served here: 7500 Security Boulevard, Baltimore, MD 21244.

[36] In view of the *Bostock* decision, sections of Title IX that include the term "sex" are not enforceable because the statute is no longer secular becuase the term "sex" was held to mean "sexual orientation" and "gender identity."

[37] In view of the *Bostock* decision, sections of Title VII that include the term "sex" are not enforceable because the statute is no longer secular becuase the term "sex" was held to mean "sexual orientation" and "gender identity."

orientation" and "gender identity" in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (2020). They reached their decision in *Bostoch*, like they did in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and *United States v. Windsor*, 133 S.Ct. 2675 (2013) not out of good will, but out of an effort to entangle our government with the religion of Secular Humanism as advanced by the highly dangerous and intolerant LGBTQ cult.

37. The Supreme Court's intellectually dishonest discovery in *Bostock* means that certain sections of Title VII, VIII, and IX lack a secular purpose and constitute a sham that puts the religion of Secular Humanism over non-religion.

38. According to the testimonials of ex-gays, ex-trans, medical experts, persecuted Christians, and licensed ministers, "sexual orientation" and "gender identity" are not medical science, they are religious doctrines that are inseparably linked to the religion of Secular Humanism.[38]

39. As taxpayers who have been persecuted by the LGBTQ cult, the Plaintiffs, seek an injunction to prohibit the U.S. Equal Employment Commission, the Department of Education, and the Department of Justice from enforcing the sections of Title VII, Title VIII, and Title IX until either (a) the Supreme Court reverses itself or (b) Congress replaces the word "sex" with "one person who was born as a biological male and one person who was born as a biological female." [39] This Court has the authority to issue an injunction to this effect because the First

---

[38] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

[39] The Judicial branch created this problem, it should be required to fix it in order to restore its integrity. In defense of the Justices on the Supreme Court in *Bostock,* they were just being logically consistent with the holdings in *Obergefell* and *Windsor*. Judges do not go out and look for fights. Judges take up controversies that are brought to them. Fortunately, for the Plaintiffs

Amendment Establishment Clause implications in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___,
2020 WL 3146686 (2020) were not considered by the Supreme Court, and the Supreme Court is
not a super legislature that gets to create an unchecked legislative well spring out of the
Substantive Due Process Clause of the Fourteenth Amendment. The United States does not have
a living Constitution, our Constitution is "dead, dead, dead." Quoting Justice Speaking at
Southern Methodist University.

### B.   Facts That Concern HHS's Rule Change

40.   The evidence shows that the 2020 Trump Rule is set to go into effect on August 18,
2020. However, in view of the *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686
(2020) decision, the evidence shows that HHS is threatening to replace the 2020 Trump Rule
with the 2016 Obama Rule - further eroding the supremacy of the United States Constitution and
endangering the rights of the First Amendment of the Plaintiffs. Also, in view of the
intellectually dishonest decision in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL
3146686 (2020), HHS might be forced by court order to revive the 2016 Obama Rule - once
again having to interpret the term "sex" to mean "sexual orientation" and "gender identity." The
Plaintiffs seek an injunction to require HHS to clarify the rule so that it is clear that the
Establishment Clause of the First Amendment requires HHS to forever and always interpret the
term "sex" to have a secular meaning.

---

*Bostock, Obergefell,* and *Windsor* were all decided on the wrong Constitutional narrative. The
Establishment Clause issues were lurking in the shadows but undecided upon.

41. The Plaintiffs' content that the Establishment Clause requires all aspects of the
Federal government to only interpret the word "sex" to mean "a person who was born as a
biological male and a person who was born as a biological female." [40]

42. Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. §
18116, specifically and explicitly protects against discrimination in the provision of health care
services. In view of the Establishment Clause, the Plaintiffs contend that Section 1557 should be
read to mean that it prohibits discrimination based on "[being born male, being born female],
race, color, national origin, age, and disability," (secular considerations). The Plaintiffs assert
that Section 1557 cannot be read to mean that it prohibits discrimination based on " [sexual
orientation, gender identity], race, color, national origin, age, and disability." (non-secular
considerations). The only secular interpretation of the word "sex" is this: "sex" means the
anatomy by which a person was born with. "Sex" cannot mean immoral sexual practices
preferred by the LGBTQ Secular Humanist cult nor can it mean that the faith-based doctrines
floated by the LGBTQ cult are real or based on medical science. [41]

---

[40] The Plaintiffs in this case seek a preliminary and permanent injunction that not only prohibits
HHS's from replacing the 2020 Trump Rules with the 2016 Obama Rule before August 18, 2020
but will forever and always prohibit HHS and the other Defendants from ever creating or
enforcing any policy that directly or symbolically respects, promotes, endorses, or favors sexual
orientation orthodoxy, gender identity ideology, or any other LGBTQ doctrine no matter who is
in the White House. The 2016 Obama Rule violates the Establishment Clause of the First
Amendment, whereas the 2020 Trump 2020 cures the Establishment Clause violations. If HHS
replaces the 2020 Trump Rule with the 2016 Obama rule, the Establishment Clause violations
will be inflicted again.  The 2016 Obama Rule was non-secular, whereas the 2020 Trump Rule
is secular and neutral. The Establishment Clause requires that the Government view "men as
men" and "women as women."
[41] Although the 2020 Trump Rule cannot change the law, it impacts how it is interpreted and
enforced and the HHS is bound by oath under Article VI of the United States Constitution to not
shape rules and interpretations that violate the Establishment Clause by lacking a primary secular
purpose.

43. In 2016, HHS promulgated the 2016 Obama Rule, to implement the nondiscrimination requirements of Section 1557. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (formerly codified at 45 C.F.R. pt. 92) (the "2016 Final Rule"). Inconsistent with Section 1557's nondiscrimination mandate, the 2016 Obama Rule coercively imposed that health care providers and insurers could not discriminate against self-identified lesbian, gay, bisexual, transgender, and queer ("LGBTQ") cult members in making medical and coverage decisions which would have lead to the discrimination against providers and insurers who do not believe in the merits of LGBTQ ideology. The 2016 Obama Rule would have had the effect of promoting the religion of Secular Humanism by requiring health providers and insurers respect self-asserted sex-based identity narratives that are questionably real, questionably moral, and have a tendency to erode community standards of decency.

44. According to the testimonies of ex-gays, ex-trans, medical experts, religious experts, and persecuted Christians, there is no such thing as "transvestites," "homosexuals," or "LGBTQ people."[42] There are only some individuals who for some period of time self-identify as homosexual or transgender. Id.[43] While the Free Exercise Clause of the First Amendment affords them the right to formulate any self-asserted sex-based identity narrative no matter how

---

[42] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

[43] While the Plaintiffs stipulate that the Free Exercise Clause allows an individual to self-identify as a homosexual. The Establishment Clause prohibits the government from respecting or recognizing homosexual orthodoxy. Justice Rutledge, dissenting in *Everson v. Board of Education*, 330 U.S. 1 (1947) of the Township of Ewing stated: "Religion" appears only once in the [First] Amendment. But the word governs two prohibitions and governs them alike. It does not have two meanings, one narrow to forbid "an establishment" and an other, much broader, for securing "the free exercise thereof."

morally regungant, those same individuals can convert out of that world view as thousands of people have. See Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7.

45. The Plaintiffs contend that HHS's failure to clarify that the Establishment Clause is the legal basis for replacing the 2016 Obama Rule with the Trump 2020 Rule makes the change look arbitrary and capricious and can lead to a lot of problems in the future that hurt the public's interest and would prejudice the Plaintiffs.[44]

**C. Facts Surrounding The History Of The Affordable Care Act As It Relates Here**

46. On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), recognizing the importance of providing patients with prompt and nondiscriminatory access to medical care and to information about all treatment options and was designed for secular purposes. Section 1557 of the ACA protects against discrimination in the provision of health care services. It provides, in relevant part: Except as otherwise provided for in this title [I] (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29 [Section

---

[44] If HHS does not clarify that it replaced the 2016 Obama Rule with the 2020 Trump Rule because the Establishment Clause required it, it will appear that the Rule change was arbitrary and capricious, and dishonest Secular Humanist government actors will continue to monkey with the Fourteenth and Fifth Amendment. Although neither the 2020 Trump Rule nor the 2016 Obama Rule can change the law, the interpretation afforded by the 2020 Trump Rule must always remain, and never the 2016 Obama Rule in view of the requirements of the Establishment Clause of the First Amendment. Even if a new administration was to come in at some point in the future that wanted to revert back to the 2016 Obama Rule, they must not be permitted to do so in view of the Establishment Clause's requirement that all aspects of the State and Federal government get out of bed with and disentangle the LGBTQ cult's orthodoxy.

504 of the Rehabilitation Act of 1973], be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under, any health program or activity, any part of which is

receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or

under any program or activity that is administered by an Executive Agency or any entity

established under this title [I] (or amendments). The enforcement mechanisms provided for and

available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply

for purposes of violations of this subsection.  42 U.S.C. § 18116(a).

47.  Section 1557 prohibits discrimination based on "sex," and the Plaintiffs contend that

the Establishment Clause prohibits the term "sex" to mean anything other than a person who was

born with male anatomy or a person who was born with female anatomy.[45]  "Sex" cannot be

interpreted to mean non-secular faith-based constructs like "sexual orientation" or "gender

ideology" because such an interpretation amounts to government action that fails all three prongs

of *Lemon*.  Section 1557 also prohibits discrimination on the basis of race, color, national origin,

age, and disability, all of which are natural, neutral, non-controversial considerations, which

means they are secular.

48.  Section 1557 provides that "[t]he enforcement mechanisms provided for and

available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply

for purposes of violations of this subsection." Id. § 18116(a).

49.  Section 1557 further provides that the Secretary of HHS "may promulgate

regulations to implement this section." *Id.* § 18116(c).[46]

---

[45] HHS needs to make that clear in the 2020 Trump Rule.

[46] This means that the Court can order the Secretary of HHS to modify the 2020 Trump Rule so
that it is clear that HHS can never again include "sexual orientation" or "gender identity"
language in the regulations or in the interpretations of Congress's laws.

**D. Facts Surrounding The 2016 Obama Rule And The Constitutional Problems With It**

50. On May 18, 2016, HHS published the 2016 Obama Rule implementing Section 1557. See Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (formerly codified at 45 C.F.R. pt. 92) (the "2016 Final Rule"). [47]

51. In implementing Section 1557's prohibition of discrimination "on the basis of . . . sex," the 2016 Obama Rule defined "on the basis of sex" to include "discrimination on the basis of. . . sex stereotyping, and gender identity." 81 Fed. Reg. at 31,467 (formerly codified at 45 C.F.R. § 92.4).

52. The 2016 Obama Rule defined "gender identity" as "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female, and which may be different from an individual's sex assigned at birth." Id.[48]  In the 2016 Obama Rule, HHS emphasized that "even where it is permissible to make sex-based distinctions, individuals may not be excluded from health programs and activities for which they are otherwise eligible based on their gender identity." 81 Fed. Reg. at 31,409.[49] The 2016 Obama Rule promoted the

_____

[47] A copy of the 2016 Obama Rule can be downloaded at this link:
https://www.dropbox.com/s/fo29kw0m8rcltb3/Obama%202016%20Rule.pdf?dl=0.
Although the Office of Civil Rights ("OCR") at HHS stated in 2016 "that current law is mixed on whether existing Federal nondiscrimination laws prohibit discrimination on the basis of sexual orientation as a part of their prohibitions on sex discrimination," 81 Fed. Reg. at 31388, the Supreme Court now has arguably answered this question by holding in *Bostock* that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 2020 WL 3146686, at *7. But the *Bostock* decision is a sham that is based on a sham that causes Title VII to lack a secular purpose. The wrong Constitutional narrative was being litigated until now. The Establishment Clause has exclusive jurisdiction over whether the government can respect, recognize, and promote "sexual orientation" orthodoxy "gender identity" ideology.
[48] The definition is non-secular in nature and has the effect of failing the three prongs of the *Lemon* Test.
[49] This restriction makes the 2016 Obama Rule non-secular in nature and causes HHS to be in violation of the Establishment Clause. HHS needs to clarify that.

unproven religious belief that if a person looks within them they can self-determine their gender based on how they feel at that moment and that all providers and insurers are to respect that feeling, even if the feeling is removed from reality and could lead to the implementation of non-secular procedures that are immoral and injurious to Christians, like the Plaintiffs who will never allow themselves to direct or indirectly promote LGBTQ orthodoxy.

53. In defining "on the basis of sex" to include "discrimination on the basis of . . . sex stereotyping, and gender identity" in the 2016 Obama Rule, HHS explained that "courts, including in the context of Section 1557, have recognized that sex discrimination includes discrimination based on gender identity. Thus, we proposed to adopt formally this well-accepted interpretation of discrimination 'on the basis of sex.'" 81 Fed. Reg. at 31,387-88. The problem is that the courts that said that the term "sex" means "sexual orientation" and "gender identity" did not think about the implications of the Establishment Clause when making their findings. The Establishment Clause issues were lurking in the shadows of these cases but not decided upon which renders those courts' decisions invalid.

54. With respect to health care insurance providers or employee benefits plans, the 2016 Obama Rule specifically required covered entities to treat individuals consistent with their gender identity and sexual orientation even though the requirement violated the Establishment Clause. See 81 Fed. Reg. at 31,471 (formerly codified at 45 C.F.R. § 92.206). Also, the 2016 Obama Rule prohibited covered entities from having or implementing "a categorical coverage exclusion or limitation for all health care services related to gender transition," 81 Fed. Reg. at 31,472 (formerly codified at 45 C.F.R. § 92.207(b)(4)), because such an exclusion is "discriminatory on its face," 81 Fed. Reg. at 31,456. This requirement was really nothing more

than an emotional appeal that was crafted to usurp the Establishment Clause by Secular Humanists to entangle the government with the religion of Secular Humanism. In adopting these provisions, HHS explained that blanket "exclusions of coverage for all care related to gender dysphoria or associated with gender transition" were "outdated and not based on current standards of care." 81 Fed. Reg. at 31,429. What HHS failed to realize at the time is that the Establishment Clause of the United States never goes out of style, and the laws of the United States must not conflict with the Establishment Clause no matter what those in power at the moment feel. The United States is governed by transcultural natural law, not by mob rule.

55. The "range of transition-related services" the 2016 Obama Rule contemplated were "not limited to surgical treatments and may include, but [were] not limited to, services such as hormone therapy and psychotherapy, which may occur over the lifetime of the individual." 81 Fed. Reg. at 31,435-36. Meanwhile, HHS under Obama failed to understand that the "range of "transition-related services" were non-secular and forcing insurers and providers to advance "transition-related services" was a direct violation of the Establishment Clause.

56. In the 2016 Obama Rule, HHS failed to distinguish between secular procedures and non-secular procedures.[50]

---

[50] A key problem that this case raises is the failure of HHS to distinguish between a secular medical procedure and a non-secular medical procedure. Convenience abortion, also called nontheraputic abortion, is a non-secular procedure and so are just about all of the transition procedures. Plaintiff Sevier filed an amicus brief in *California v. U.S. Department of Public Health*, 3:19-cv-01184-EMC (ND Cal. 2019) in which they demanded that HHS clarify its rules for why it was withholding 60 million dollars that would have otherwise have gone to Planned Parenthood to finance convenience abortions. If a 32 year old woman wants to sacrifice her child on the altar of convenience because she believes that the baby inside the womb is not a person - she can do so - but the Establishment Clause requires that she pay for it herself so that there is no blood on the hands of the taxpayers who believe that such a practice are self-evidently evil. (See the Life Appropriation Act). That is what the Establishment Clause balanced with the Free Exercise Clause requires. Likewise, if a 25 year old male who self-identifies as a

57. Consistent with the language of Section 1557, which provides that the "enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations" of Section 1557, 42 U.S.C. § 18116(a) (emphasis added), the 2016 Obama Rule adopted a unitary legal standard for addressing discrimination in health care and enforcing Section 1157. The 2016 Obama Rule provided: "The enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, or the Age Discrimination Act of 1975 shall apply for purposes of Section 1557 as implemented by this part." 81 Fed. Reg. at 31,472 (formerly codified at 45 C.F.R. § 92.301) (emphasis added)

58. In the preamble to the 2016 Obama Rule, HHS stated that *all* enforcement mechanisms available under the statutes listed in Section 1557 are available for purposes of Section 1557 enforcement, regardless of an individual's protected characteristic or characteristics they felt that they had. Otherwise, different enforcement mechanisms and standards would apply depending on whether an individual's claim is based on her sex, race, age, or disability. 81 Fed. Reg. at 31,439-40. HHS thus interpreted Section 1557 as "authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation." *Id.* at 31,440. If the 2016 Obama Rule had been implemented, Christian providers

---

transvestite wants to have an "brow reduction" to feminize his face, "breast augmentation," and lesson training to "modify the vocal range" to advance his religious belief that he is mystically really a woman trapped in a man's body, he can do so. But he might have to pay for it himself because the government cannot force insurers, health providers, and taxpayers to cover the cost of non-secular procedures that may cause them to feel culpable in enabling acts of immorality. The LGBTQ cult seems unwilling or incapable of understanding these principles and instead remain bent on twisting the truth just it attempts to distort everything else in life through an implausible religion.

and insurers, like the Plaintiffs, would be subjected to all kinds of coercive litigation for refusing
to kneel at the LGBTQ altar.

59. The 2016 Obama Rule also recognized that a private right of action is available under
Section 1557 and compensatory damages are available. See 81 Fed. Reg. at 31,472 (formerly
codified at 45 C.F.R. §§ 92.301(b), 92.302(d)). HHS explained that its "interpretation of Section
1557 as authorizing compensatory damages is consistent with our interpretations of Title VI,
Section 504, and Title IX." 81 Fed. Reg. at 31,440.

60. The 2016 Obama Rule did not incorporate Title IX's blanket religious exemption
because Section 1557 "contains no religious exemption." 81 Fed. Reg. at 31,380. In declining to
import Title IX's religious exemption, HHS further explained that "Title IX and its exemption
are limited in scope to educational institutions, and there are significant differences between the
educational and health care contexts that warrant different approaches." *Id.* HHS noted that "a
blanket religious exemption could result in a denial or delay in the provision of health care to
individuals and in discouraging individuals from seeking necessary care, with serious and, in
some cases, life threatening results." *Id.*[51]

61. After a deliberate analysis, HHS determined that a "more nuanced approach in the
health care context" was warranted. Id. The 2016 Obama Rule provided: "Insofar as the
application of any requirement under this part would violate applicable Federal statutory
protections for religious freedom and conscience, such application shall not be required." 81 Fed.
Reg. at 31,466 (formerly codified at 45 C.F.R. § 92.2(b)(2)).

---

[51] The 2016 Obama Rule was crafted as a sham to create an indefensible legal weapon against
Christian insurers and health providers who believe that sexual orientation orthodoxy and gender
identity ideology and practices are completely immoral. In theory, the 2016 Rule back did not
need to include the religious exemptions because that is what the Free Exercise Clause is for.

**E.   Facts Concerning The The Proposed Revisions Of The 2016 Obama Rule Offered By HHS Under President Trump**

62. On June 14, 2019, the Trump Administration issued a Notice of Proposed Rulemaking, proposing to "make substantial revisions" to the 2016 Obama Rule, including repealing certain provisions. See Notice of Proposed Rulemaking, Nondiscrimination in Health and Health Education Programs or Activities, 84 Fed. Reg. 27,846, 27,848 (June 14, 2019) ("Proposed Rule")

63. In an attempt to explain why it was reversing course, the 2016 Obama Rule went into effect, HHS stated it was revising the implementing regulations "to better comply with the mandates of Congress, address legal concerns, relieve billions of dollars in undue regulatory burdens, further substantive compliance, reduce confusion, and clarify the scope of Section 1557 in keeping with existing civil rights statutes and regulations prohibiting discrimination on the basis of race, color, national origin, sex, age, and disability." 84 Fed. Reg. at 27,846. What HHS did not say and what it needs to state now is that the 2016 Obama Rule needed to be replaced because the Establishment Clause required it because the 2016 Obama Rule excessively entangled the government with the religion of Secular Humanism, as advocated by the licentious LGBTQ cult.

64. HHS further claimed that the 2016 Obama Rule "exceeded its authority under Section 1557, adopted erroneous and inconsistent interpretations of civil rights law, caused confusion, and imposed unjustified and unnecessary costs." Id. at 27,849.

65. What HHS should have further clarified but did not was that the 2016 Obama Rule exceeded its authority under Section 1557 by giving the impression that the favored religion of the Nation was Secular Humanism, as advocated by the LGBTQ cult.

66.  The 2016 Obama Rule would not stand because it would not withstand scrutiny in its original form in view of the Establishment Clause, but HHS did not clarify that in the proposed Rule change.

67.  HHS received nearly 200,000 comments during the public comment period. The comments that HHS received identified and expressed concerns about many of HHS's proposed revisions but they were all based on emotional appeals that were designed to usurp the Establishment Clause.  HHS did not point that out.  Commenters alleged that changes would cause immediate and irreparable harm to self-identified LGBTQ people because they want Secular Humanism to be the official religion of the Nation.

F.  **Facts Surrounding The 2020 Trump Rule And Why It Needs To Be Clarified So That This Fight Can Be Permanently Resolved In A Manner That Reflects What The Establishment Clause Requires For The Benefit Of The Public**

68.  HHS published the 2020 Trump Rule in the Federal Register on June 19, 2020, making only "minor and primarily technical corrections." See Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160, 37,161 (June 19, 2020). A copy of the 2020 Trump Rule can be downloaded at this link: https://www.dropbox.com/s/6r2o7hq59wwt2v7/2020%20Trump%20Rule.pdf?dl=0

69. In adopting the 2020 Trump Rule, HHS failed to address adequately many of the emotional issues commenters raised, including concerns that the proposed elimination of the definition of "on the basis of sex," which the 2016 Obama Rule defined to include gender identity and sex stereotyping, would invite discrimination against self-identified homosexuals who were part of the LGBTQ cult because their religious beliefs were not being respected. *See* 85 Fed. Reg. at 37,165, 37,180. For the sake of the commenters, HHS could have stated that the

reason why the 2020 Trump Rule replaced the 2016 Rule was because the First Amendment

Establishment Clause of the United States Constitution required it.[52]

70. HHS explicitly rejected comments urging it to wait until the Supreme Court decided

*Bostock* and related cases because of the potential implications for the 2020 Trump Rule. *See* 85

Fed. Reg. at 37,168.[53] Yet, HHS did not need to wait to obey the Establishment Clause but it did

need to make that clear in order to avoid being accused of engaging in arbitrary and capricious

decision making.

71. HHS asserted that even if the Supreme Court determined that the prohibition on sex

discrimination in Title VII encompassed gender identity and sexual orientation, such a ruling

does not fully address the implications for the health care context. 85 Fed. Reg. at 37,168. What

HHS should have clarified but did not is that if the Supreme Court found that the term "sex" in

---

[52] It is vital that this legal basis be written into the rule so that the rule does not keep changin
every time a new President gets elected. This back and forth will continue indefinitely. If a
person like Joe Biden is elected to the Presidency, they are going to revive the 2016 Obama in
pursuit of making Secular Humanism the official religion of the Nation because they do not
understand First Amendment law and just want to appease the mob. Whereas, if a person like
Donald Trump, who is a rule of law proponent, is elected they will keep the 2020 Trump Rule in
place but not really be able to explain why they are doing so. The Plaintiffs in this action are
supplying HHS with the reason why HHS must always keep the 2020 Trump Rule in place and
never revert back to the 2016 Obama Rule no matter who is President. The Plaintiffs are asking
the Court to make HHS clarify that the reason why the 2020 Trump Rule must stay in place is
because the Establishment Clause requires it due to the fact that any other interpretation rends
the Affordable Care Act and other laws like it unconstitutional for lacking a secular purpose.
[53] The Supreme Court should have dismissed *Bostock* for the same reason it should have
dismissed *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and *United States v. Windsor*, 133 S.Ct.
2675 (2013). All of those cases were based under a Constitutional narrative that was not even
remotely applicable. The Equal Protection Clause only applies if the matter involves
immutability and genetics, and substantive Due Process only applies if the matter involves
American heritage and tradition. Homosexual involves neither. It is a religion. First
Amendment Establishment Clause issues were lurking in the shadows of *Bostock*, *Windsor*, and
*Obergefell* and not decided upon, which means that Stare Decisis and Precedent does not apply
whatsoever.

Title VII meant "sexual orientation" and "gender identity," then Title VII would no longer be enforceable because it no longer had a primary secular purpose. The Supreme Court interprets the law, but it cannot make the law. Of course, the Supreme Court made its ruling hoping to promote Secular Humanism through the organs of government, but that kind of judicial dishonesty will only backfire.

72. Here are some other revisions of the 2020 Trump Rule:

(a) Repeals the definition of "on the basis of sex" and the specific prohibition of discrimination on the basis of gender identity and sex stereotyping, see 85 Fed. Reg. at 37,161-62;

(b) Repeals the unitary legal standard for enforcing violations of Section 1557 and eliminates provisions recognizing a private right of action and compensatory damages, see 85 Fed. Reg. at 37,162;

(c) Incorporates religious exemptions as the Free Exercise Clause and Religious Freedom Restoration Act requires, *see id.*;

(d) Excludes from the scope of Section 1557 certain health programs and activities and health insurance plans, *see id.;*

(e) Repeals gender identity and sexual orientation protections in other regulations, *see id.;* and

(f) Repeals provisions relating to discrimination on the basis of association, *see id.*

73. These changes were not arbitrary and capricious, these changes were based on what the Establishment Clause of the First Amendment require, but HHS must spell that out or the judicial putsch seen in *Windsor, Obergefell,* and *Bostock* will continue to grow while

eviscerating our culture of rights and community standards of decency.  This is the kind of thing

that leads to civil war and sedition.  After all, there is no more remaining land to sail to, and

Americans can never be expected to kneel at the altar of an immoral religion just because a

handful of unelected atheistic Justices think Secular Humanism is morally superior to all others.

### G.  Facts Surrounding The How The 2020 Trump Rule Removes Sexual Orientation Orthodoxy And Gender Identity Ideology Out Of Other Regulations

74.  The 2020 Trump Rule amends a series of other regulations that had included "gender

identity" ideology and "sexual orientation" orthodoxy as prohibited bases of discrimination that

were really purposed to promote the religion of Secular Humanism, including regulations related

to Medicaid State Plans, Programs for All-Inclusive Care for the Elderly (PACE), and ACA state

health insurance exchanges and plans. The 2020 Trump Rule eliminates the promotion of

"gender identity" ideology and "sexual orientation" orthodoxy in those regulations but did not

clarify that it did so because the Establishment Clause required that they be removed. 85 Fed.

Reg. at 37,218-22, 37,243.[54]

75.  These other regulations were not issued pursuant to Section 1557 and do not

interpret Section 1557. They were promulgated by the Centers for Medicare and Medicaid

Services  pursuant to the authority granted by several other statutes. These unrelated regulations

were not promulgated pursuant to HHS's authority to implement regulations under Section 1557.

The Centers for Medicare and Medicaid Services failed to clarify that they were being

promulgated because the Establishment Clause of the First Amendment required it.  The

---

[54] Without clarifying the rule, self-identified transvestites and self-identified homosexuals, who harbor an amazing amount of animosity towards themselves and Christians, could accuse HHS of arbitrarily modifying the rule because of phony animus towards the LGBTQ cult.

Plaintiffs contend that this lack of clarification is injurious to the public's interest and the rule of law.

76.  The 2020 Trump Rule amends regulations regarding Medicaid State Plans and Medicaid contractors, 42 C.F.R. §§ 438.3(d)(4), 438.206 (c)(2), and 440.262, which were issued pursuant to HHS's authority under Section 1902 of the Social Security Act to implement Section 1902(a)(19). That section directs HHS to "provide such safeguards as may be necessary to assure that eligibility for care and services under the [Medicaid] plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interest of the recipients." 42 U.S.C. § 1396a(a)(19); see also Medicaid and Children's Health Insurance Program (CHIP) Programs, 81 Fed. Reg. 27,498, 27,538-39, 27,666 (May 6, 2016). Ultimately, it is in the best interest of the recipients and all Americans that all Federal□ agencies obey the Establishment Clause of the First Amendment. But HHS failed to make that clear in the 2020 Trump Rule.

77.  Prior to the Trump 2020 Rule, 42 C.F.R. § 438.3(d)(4) provided: "The MCO, PIHP, PAHP, PCCM or PCCM entity will not discriminate against individuals eligible to enroll on the basis of race, color, national origin, sex, sexual orientation, gender identity, or disability and will not use any policy or practice that has the effect of discriminating on the basis of race, color, or national origin, sex, sexual orientation, gender identity, or disability." The Trump 2020 Rule amends § 438.3(d)(4) to state: "The MCO, PIHP, PAHP, PCCM or PCCM entity will not discriminate against individuals eligible to enroll on the basis of race, color, national origin, sex, or disability and will not use any policy or practice that has the effect of discriminating on the□ : basis of race, color, or national origin, sex, or disability." 85 Fed. Reg. at 37,243 (to be codified

at 42 C.F.R. § 438.3(d)(4)). HHS failed to clarify that the Establishment Clause required the modifications. [55] The public's and Plaintiffs interest would be best served if HHS clarified the 2020 Trump Rule to that effect.

78. PACE is a program for services for elderly persons, most of whom are Medicaid and Medicare dual eligible, to keep them in the community rather than moving to nursing homes. See 42 C.F.R. §§ 460.98, 460.112. HHS added sexual orientation to the list of protected categories of persons eligible for PACE services in 2006, explaining that "we do not believe anyone should be denied enrollment in PACE because of discrimination of any kind." Medicare and Medicaid Programs; Programs of All-Inclusive Care for the Elderly (PACE); Program Revisions, 71 Fed. Reg. 71,244, 71,295 (Dec. 8, 2006). But by including this in the Rule it discriminated against all people who do not believe in the plausibility of "sexual orientation" or "gender identity" ideology. The 2006 Rule, created the very kind of real discrimination that it hoped to avoid because the old Rule was a sham. HHS did not explain any of that in the 2020 Trump Rule change.

79. Prior to the 2020 Trump Rule, 42 C.F.R. § 460.98(b)(3) provided: "The PACE organization may not discriminate against any participant in the delivery of required PACE services based on race, ethnicity, national origin, religion, sex, age, sexual orientation, mental or

---

[55] The Plaintiffs are asking that the Court require HHS to clarify the 2020 Trump Rule in a manner that makes it abundantly clear that the reason why the terms "sexual orientation" and "gender identity" are no longer recognized and respected in § 438.3(d)(4) is because the Establishment Clause of the First Amendment requires that they be removed. The testimonies of ex-gays, ex-transvestites, medical experts, persecuted Christians, and licensed ministers all confirm beyond any conceivable doubt that "sexual orientation" and "gender identity" are controversial non-secular doctrines that are faith-based and not based on conclusive medical science. Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

physical disability, or source of payment." The 2020 Trump Rule amends 42 C.F.R. §

460.98(b)(3) to state: "The PACE organization may not discriminate against any participant in

the delivery of required PACE services based on race, ethnicity, national origin, religion, sex,

age, mental or physical disability, or source of payment." 85 Fed. Reg. at 37,243 (to be codified

at 42 C.F.R. § 460.98(b)(3)). The 2020 Trump Rule also eliminates protections against sexual

orientation discrimination in 42 C.F.R. § 460.112(a). 85 Fed. Reg. at 37,220, 37,243 (to be

codified at 42 C.F.R. § 460.112(a)). But the 2020 Trump Rule does not clearly state that the

Establishment Clause was the reason why. [56]

80.   The Trump 2020 Rule eliminates the prohibitions on "gender identity" and "sexual

orientation" discrimination in these regulations without adequately explaining that the

Establishment Clause mandated the modification whether any one likes it or not. *See* 85 Fed. Reg.

at 37, 219-21, 37,247-48 (to be codified at 45 C.F.R. §§ 147.104(e), 155.120(c)(1)(ii),

155.220(j)(2)(i), 156.200(e), & 156.1230(b)(2)).   HHS could easily clarify that prohibitions on

discrimination based on "gender identity" and "sexual orientation" are eliminated because the

Establishment Clause of the First Amendment requires their elimination because their inclusion

makes the regulations a non-secular sham that lacks a primary secular purpose.

---

[56] Under Obama, prohibitions of discrimination on the basis of "sexual orientation" and "gender
identity" were added to regulations regarding group and individual market health insurance plans
subject to the ACA and to ACA-created health insurance exchanges and qualified health plans to
make the law non-secular. These prohibitions were not really added to further the ACA's aim of
expanding insurance coverage, which discriminatory marketing practices and benefit designs can
thwart.  They were added to promote the religion of Secular Humanism.  See 45 C.F.R. §§
147.104(e), 155.120(c)(1)(ii), 155.220(j)(2)(i), 156.200(e), & 156.1230(b)(2); see also PPACA;
Establishment of Exchanges and Qualified Health Plans, 77 Fed. Reg. 18,310, 18,319, 18,415
(March 27, 2012); PPACA; Health Insurance Market Rules, 78 Fed. Reg. 13,406, 13,417 (Feb.
27, 2013); PPACA; Exchange and Insurance Market Standards for 2015 and Beyond, 79 Fed.
Reg. 30,240, 30,261 (May 27, 2014); PPACA; HHS Notice of Benefit and Payment Parameters
for 2018, 81 Fed. Reg. 94.058, 94,064, 94,152 (Dec. 22, 2016).

81.  In clarifying the 2020 Trump Rule in the manner that the Plaintiffs demand, HHS does not need to offer a cost-benefit analysis because the benefits of obeying Establishment Clause needs no explanation.[57] By adding the Establishment Clause clarification, HHS cannot be accused of harboring animus towards self-identified homosexuals. By including the clarification, HHS can legitimately state that the rule change was based on "biology," not "bigotry." Likewise, when the Plaintiff s refuse to provide insurance or health care service to self-identified transvestites, they can say that their refusal to do so is based on biology, not bigotry.

## H.  Facts Surrounding The Display Of The Gay Pride Flag On The Front Of The U.S. Embassy In Russia

82.  The United States is a Constitutional Republic. The State Department and Ambassadors are Federal actors, who are required by oath undertaken pursuant to Article VI to not create or enact policies that violate the United States Constitution. This includes obeying the Establishment Clause of the First Amendment, even if inconvenient to do so.

83.  The State Department oversees the U.S. Embassies. The U.S. Embassy located in Moscow is considered to be part of the sovereign territory of the United States or on "American soil" for all practical purposes.

84.  The U.S. Embassy in Moscow and its employees are required to obey the United States Constitution. The U.S. Embassy in Moscow is a public building that is fund by the taxpayers, like the Plaintiffs. The U.S. Embassy in Moscow is not a temple for LGBTQ Secular Humanism.

---

[57] The United States is a Constitutional Republic. If Federal agencies, like HHS, do not obey the Constitution, we do not have a Country. HHS is required to obey the Constitution and it does not have to explain why doing so is beneficial from a cost-benefit perspective based on degrees.

85. The Supreme Court and just about all of the U.S. courts of appeal have found that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause.

86. The testimonies of ex-gays, ex-trans, medical experts, persecuted Christians, and licenced ministers demonstrate that the LGBTQ cult is a denominational sect that is inseparably linked to the religion of Secular Humanism. Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

87. The LGBTQ cult has its own symbol in the form of the rainbow colored flag, which represents the cult's sincerely held religious beliefs and ultimate concern. The gay pride flag is to the LGBTQ cult what the Swastika is to the Nazis and what the star and crescent is to the religion of Islam.

88. The LGBTQ cult has declared June to be its month to celebrate its religious ideology that promotes licentiousness and amounts to nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the United States government.

89. Sometime in June, the U.S. Ambassador to Russia ignored State Department regulations and displayed the gay pride flag on the front of the Embassy, hanging just below the American Flag.[58]

90. The placement of the permanent display was not a coincidence. The goal of the Ambassador's policy decision to construct the display was to convey to the United States citizens and to the world that the official religion of the United States is Secular Humanism, as advocated

---

[58] According to State Department policy, Embassies are supposed to obtain permission from Washington to fly certain flags. However, the Establishment Clause of the United States prohibits the display of the LGBTQ rainbow flag in the manner complained of at any time.

by the LGBTQ cult. The permanent and prominent display of the gay pride flag was a deliberate attempt by the U.S. Ambassador to imperialistically impose a religious worldview on the Russian and American people that is self-evidently immoral, indecent, and subversive to human flourishing.

91. In early July 2020, Russian President Vladimir Putin suggested that a "gay pride" flag flying at the U.S. embassy in Moscow indicates that the people working there are likely self-identified homosexuals.[59] The gospel message sent by the Ambassador's complete disregard of the Establishment Clause is that all Americans respect, endorse, favor, and condone LGBTQ ideology - which is false. Millions of Americans who are not brainwashed by Secular Humanism believe that LGBTQ ideology is immoral. The Ambassador can speak for himself, but he cannot use the organs of government to speak on behalf of the Nation in the manner in which he did - creating an international scandal that is embarrassing to all Americans who understand the rule of law. From every angle, the Government's entanglement with the LGBTQ cult has been a complete disaster.

---

[59] When Putin was told during a televised video conference that the U.S. embassy had a pride flag hanging from the front of its building to celebrate Pride month in June, he asked, "Who works in this building?" When the president was told "Americans," he responded, "Let them celebrate." "They've shown a certain something about the people who work there," he added with a smile, according to The Moscow Times, seeming to suggest that flying the rainbow flag could be a reflection of the embassy workers' homosexuality or transgenderism. According to the Moscow Times, President Putin added that the gay pride flag display "revealed something about the people that work there." He was correct. It "reveals" that the employees of the State Department do not know the difference between "real and fake," "right and wrong," and "secular and non-secular" and that they are, thereby, incapable of fulfilling their Article VI oath of office to uphold the United States Constitution. It revealed that the State Department employees are using their position in government to excessively entangle our government with their immoral and licentious religion that millions of Americans who have the common sense, decency, and humility to believe in absolute truth adamantly oppose.
tin-mocks-us-embassy-for-flying-gay-pride-flag?utm_content=bufferef8bb&utm_medium=LSN%2Bbuffer&

92. In a recent statement, the U.S. embassy floated an emotional justification stating that the "LGBTI flag was created by American artist and activist Gilbert Baker and was first raised as a symbol of hope and diversity on June 25, 1978, during the Gay Freedom Day parade in San Francisco. The Ambassador's position is nothing more than an emotional appeal. To the Plaintiffs, the LGBTQ flag is a symbol of social marginalization and violent oppression - not of "hope and diversity." The Plaintiffs have been viciously cancelled by the LGBTQ cult repeatedly. The LGBTQ cult does not want diversity of thought. It wants unquestioned submission in a manner that is anti-American.

93. The U.S. Ambassador to Russia knows that the LGBTQ flag is a symbol of tyranny and licentious immorality that hijacks the integrity of the race-based civil rights movement and represents practices that are inconsistent with the peace and safety of the Nation and of the entire world. [60]

94. The Embassy attempted to justify its unconstitutional malpractice manifested in displaying the gay pride flag by floating another irrelevant emotional appeal stating, "June is Pride Month and we celebrate that everyone deserves to live a life free from hatred, prejudice, and persecution," meanwhile the government's unconstitutional entanglement with the LGBTQ cult has only led to an enormous amount of hatred, prejudice, and persecution towards Christians at the hands of LGBTQ cult members, as a direct result of the decision to dwell in a persistent state of profound intellectual darkness. Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21. The Plaintiffs themselves have been subject to

---

[60] Like with rape, pedophilia, and polygamy, deep down everyone knows that homosexuality is immoral, especially self-identified homosexuals. Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

hardcore persecution by the LGBTQ cult for demand that the government disentangle itself with it.

95. Ambassador John J. Sullivan, who went to a Catholic high school, commented, "LGBTI rights are human rights. And human rights are universal. It's as simple as that." But it is not that "simple." The idea that "LGBTQ rights" are "human rights" is an unproven faith-based assumption and naked assertion that is completely religious. "Polygamy" is not a "human right" either.[61] "Pedophilia" is not a "human right." The right to disagree and condemn the LGBTQ cult's ideology and practices is a "human right" under the First Amendment's Free Exercise and Free Speech Clauses.

96. Ambassador John J. Sullivan did not explain why homosexuals and people claiming to be a member of the opposite sex need special rights they don't already have as human beings. This is because Ambassador Sullivan's is allergic to the truth, and his primary goal is to entangle our government and all other government's with the dangerous, destructive, desentizing, dehumanizing, depersonalizing religion of Secular Humanism through symbolic imperialistic power plays.

97. In 2013, as Prime Minister, Putin signed a bill outlawing the promotion of homosexuality, homosexual "marriage," and so-called "gay pride" parades throughout the

---

[61] It is universal that the idea of a man molesting a man is self-evidently immoral and subversive to human nature. Any reasonable observer who is not brainwashed by Secular Humanism can see that. While Ambassador John J. Sullivan has the fundamental right under the Free Exercise Clause to say what he said and to believe in all kinds of immoral and irrational things that are removed from reality, he cannot use his position in government to speak for the Nation,which has cause him to represent an international embarrassment to common sense and the rule of law.

country for the same reason that polygmy marriage remains illegal in the United States. See

*Reynolds v. United States*, 98 U.S. 145 (1878).[62]

98.   Incredibly, Russia's legal definition of marriage is more inline with the Constitution

of the United States than the current legal definition that the Supreme Court invented in the

"egotistic...judicial putsch" that culminated in *Obergefell v. Hodges.*[63]  This is because Russia's

legal definition of marriage is secular, whereas America's legal definition of marriage invented

out of the unbridled dishonesty of the Supreme Court is non-secular.

99.   In his bill entitled the Disentanglement Act, Plaintiffs Sevier defines "secular

marriage" as follows:

> "Secular marriage" means a legal union that represents an intended lifelong commitment
> between one person who was born male and one person who was born female as husband
> and wife, who are of equal but opposite genders, who become spouses of the opposite
> sex, and who have corresponding sexual anatomy that if coalesced have the actual or
> symbolic potential to create offspring who will likely have the input of the two spouses
> with whom they share the same genetic code and unbroken ancestral chain with.[64]

100.   President Putin has centered his country's values in alignment with the Russian

Orthodox Church and has more in common with our Founding Fathers than the intellectually

---

[62] The  Russia's law also banned the distribution of information on "non-traditional sexual
concepts" to children, describing such actions as attractive, promoting a "distorted understanding
of social equality of traditional and non-traditional relations," and being involved in the
"unwanted solicitation of information that could provoke interest in such relations." The Russian
law mirrors what the obscenity codes from every state requires when it comes to the distribution
and display of indecent imagery and information to minors.

[63] The Plaintiffs stipulate that while two people of the same gender could have a parody wedding
ceremony, pursuant to the Free Exercise Clause, the only form of marriage that the
Establishment Clause will allow the Federal and State government to legally recognize and
respect is a secular marriage between a man and a woman. No amount of intellectual squinting
will change that.

[64] https://www.dropbox.com/s/veg54ech7r3x3gd/New%20Florida%20Disentanglement%20Act.p
df?dl=0

See https://disentanglementact.com/

dishonest marxist working for State Department in Moscow who have managed to brainwash themselves on Secular Humanism to the point that they feel entitled to use their position in government to imperialistically impose their asinine religious beliefs on the globe. The Plaintiffs are deeply offended and embarrassed as the State Department's refusal to think logically.

101.   As taxpayers, the Plaintiffs have a logical nexus to sue the State Department for injunctive relief to remove the gay pride flag in the manner complained of for several reasons:

(a)  First, the Plaintiffs are American citizens who pay every kind of tax imaginable;

(b) Second, the Plaintiffs Sevier has a gorgeous female love interest in Russia, whose relationship is threatened by Ambassadors religious message that is purposed to allegedly convey the religious worldview of all Americans as a result of the Ambassador's profound moral superiority complex and spectacular refusal to think logically.

(c) Third, Plaintiff Sevier colludes and collabs with the Russians without apology; Plaintiffs Sevier is a topline vocalist and writer in Electronic Dance Music; he works with the very talented Russian artist-DJ-producers, like DJ Feel and DJ Fenix;[65] the songs they collaborate on together concern one man being in a committed romantic relationship with one woman; the Ambassador's permanent display of the gay pride rainbow color flag in the manner complained of tortiously interferes with Plaintiff Sevier's business relationship with their musician friends in Moscow.

(d)  Fourth, the Plaintiffs, Christian missionaries, are making colorable efforts to take a mission trip to Russia, at which point they intend to visit the U.S. Embassy in Moscow - which is

---

[65] See Headstrong ft. Ghost Wars & Carrie Skipper - Angel Blue Eyes (FEEL Remix). **https://youtu.be/teJ5dFls0uE.**

a place they have the right to be; the presence of the gay pride flag makes the Plaintiffs feel like unwelcomed second class citizens;

(e) Because Plaintiffs Harley and Quinlan are ex-gays, the display of the LGBTQ flag by the government makes them feel like non-existent people - stripped of all rights. Imagine if the Plaintiffs were Jews who had survived the Holocaust, and the Ambassador displayed the Nazi Flag. There is an analogous logical equivalence here given the well documented record of abuse inflicted on the culture by the phony tolerant and highly organized LGBTQ cult.

## IX.  FIRST CLAIM FOR RELIEF
### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A)
### Arbitrary and Capricious

102.  Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

103.  The Defendants are subject to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

104.  The APA provides that courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

104.  Whereas the 2016 Obama Rule is completely unconstitutional in that it lacks a secular purpose and is a sham that violates the Establishment Clause for failing all three prongs of the Lemon Test, the Plaintiffs stipulate that the 2020 Trump Rule is secular and constitutional. However, HHS's decision to replace the 2016 Obama Rule with the 2020 Trump Rule could be construed as arbitrary and capricious because HHS failed to provide a reasoned explanation or even point to the controlling Constitutional legal basis for why repeal of the 2016 Obama Rule was mandatory - which is the Establishment Clause of the First Amendment.  This makes the

Rule volatile and volatility hurts the Plaintiffs economically as a healthcare provider and insurance firm.

105. HHS appears to have only relied on one federal district opinion—*Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016)—and the positions of defense counsel raised in *Bostock* in replacing the 2016 Obama Rule with the 2020 Trump Rule.[66] However, the Supreme Court decided in *Bostock* - albeit in error - which has caused HHS to be sued by different elements of the LGBTQ cult. See *Whitman-Walker Clinic v. HHS*, 1:20-cv-01630-JEB (D.D.C. June 22, 2020).

106. In view of the *Bostock* decision, it is possible that the 2020 Trump Rule is "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A). In order to make the 2020 Trump Rule accord with the law, HHS must amend the 2020 Trump Rule to make clear that HHS cannot recognize sexual orientation orthodoxy or gender identity ideology in any of its policies because it is an evil that the Establishment Clause does not allow.

107. There are other compelling government interests that could be included in the rule to justify the Rule change that are not included.[67]

---

[66] Relying essentially on one federal district court opinion—*Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016)—which the preamble cites more than 40 times, HHS takes the position that "the ordinary public meaning of the term 'sex' in Title IX is unambiguous" and refers to a "biological binary meaning of sex," 85 Fed. Reg. at 37,178-80, and discrimination on the basis of sex under Title IX does not encompass discrimination on the basis of gender identity or sex stereotyping, 85 Fed. Reg. at 37,183-86.

[67] HHS could clarify the 2020 Trump Rule by stating that HHS has a compelling government interest to not respect or acknowledge "sexual orientation" orthodoxy and "gender identity" ideology because it is a religious dogma that promotes licentiousness, erodes community standards of decency, and is nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the government. The government has a narrowly tailored compelling interest to uphold community standards of decency. *Paris Adult Theatre I v. Slaton*, 413 US 49 (1973). LGBTQ ideology erodes community standards of decency. Many courts have taken the position that "any school boy knows that a homosexual act is immoral,

108. Because the Plaintiffs are prevented by their religious convictions from moving forward with their plans to launch a health provider/insurance business until the 2020 Trump Rule is perfected and affirmed, the Plaintiffs are subjected to ongoing and continuous harm.

## X. SECOND CLAIM FOR RELIEF
### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(B) and U.S. Constitution, First Amendment, Establishment Clause

109. Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

110. Under the APA, a court must "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). 293. The Establishment Clause of the First Amendment to the United States Constitution declares: "[the Government] shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause prohibits the government from favoring one religion over another, or religion over nonreligion.

111. Any state or Federal statute or agency that respects and recognizes "sexual orientation" and "gender identity" is guilty of promoting religion through the organs of government. [68] Any statute or policy that includes the terms "sexual orientation" and "gender

---

indecent, lewd, and obscene. Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F. 2d 1372, 1378 (Ct. Cl. 1969). It is not as if this reality has somehow magically changed just because it is the year 2020. The Supreme Court has long since held that "to simply adjust the definition of obscenity to social realities has always failed to be persuasive before the courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966). LGBTQ ideology and practices have always been classed as obscenity, and community standards do not evolve,

[68] The Establishment Clause permits the government to provide religious accommodations or exemptions from generally applicable laws only if, among other requirements, the accommodation (1) lifts a substantial, government-imposed burden on the exercise of religion,

identity" are unconstitutional in their making and enforcement because they fail all three prongs

of the *Lemon* Test by (1) constituting a non-secular sham that lacks a secular purpose, by (2)

cultivating an indefensible legal weapon against non-observers of the religion of Secular

Humanism, and by (3) excessively entangling the government with the religion of Secular

Humanism, as advocated by the LGBTQ cult.[69]

---

and (2) does not shift substantial costs or burdens onto a discrete class of third parties, without
regard for the third parties' interests. In other words, the government may "accommodate"
religion in accordance with the Free Exercise Clause, but it may not "promote" religion. Any
policy or statute - including the ones at issue here - that recognize or respect "sexual orientation"
orthodoxy or "gender identity" ideology:

    (a) have the primary purpose and effect of favoring, preferring, and endorsing
        Secular Humanism religious beliefs and the LGBTQ denominations over others
        and over nonreligion;

    (b) have the primary purpose and effect of preferring the religious beliefs of [the
        LGBTQ denomination and institutions over the lives and rights and interests of
        third parties - to include the Plaintiffs;

    (c) impermissibly entangle government with the religion of Secular Humanism as
        advocated by the LGBTQ cult;

    (d) coercively force all taxpayers to include non-observers of the religion of LGBTQ
        Secular Humanism bear the costs of promoting a religious worldview that they
        believe is completely immoral and harms  the free exercise rights for
        non-observers of the licentious Secular Humanism religion to oppose its
        demented ideology;

[69] To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test,
pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing,
endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at
592 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). It is important to understand that
government action "violates the Establishment Clause if it fails to satisfy any of these prongs."
*Edwards v. Aguillard*, 482 U.S. 578, 583 (1987); *Agostini v. Felton*, 521 U.S. 203, 218 (1997).
The evidence shows that the policies and statutes created and enforced by the Defendants fail all
three prongs of the  *Lemon* Test. At the core of the "Establishment Clause is the requirement that
a government justify in secular terms its purpose for engaging in activities which may appear to
endorse the beliefs of a particular religion." *ACLU v. Rabun Cnty. Chamber of Commerce,
Inc.,*698 F. 2d 1098, 1111 (11th Cir.1983).This secular purpose must be the "pre-eminent" and
"primary" force driving the government's action, and "has to be genuine, not a sham, and not
merely secondary to a religious objective." *McCreary Cnty. Ky. v. ACLU of Ky.,* 545 U.S. 844
(2005). Under this second prong of the *Lemon* test, courts ask, "irrespective of the . . . stated
purpose, whether [the state action] . . has the primary effect of conveying a message that the
[government] is advancing or inhibiting religion." *Indiana Civil Liberties Union v. O'Bannon,*

112. The Establishment Clause of the First Amendment requires the government to see "men as men" and "women as women." Any policy that requires otherwise is a sham for purposes of prong one of the *Lemon* Test. The Establishment Clause prohibits any state or federal actor from creating or enforcing any policy that respects or endorses "sexual orientation"☐ orthodoxy and "gender identity" ideology as if it is real - or "medical science" when the evidence☐ shows otherwise. Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

113. Because the term "sex" apparently includes "sexual orientation" and "gender identity" thanks to the profoundly dishonest decision in *Bostock v. Clayton Cty.*, Ga., 590 U.S. ___, 2020 WL 3146686 (June 15, 2020), HHS can never reinstate the 2016 Obama Rule, the Equal Opportunity Commission cannot enforce part of Title VII, and the Department of Education can no longer enforce part of Title IX, and the DOJ must make sure that no Federal or state agency enforces any similar policy.

114. The Supreme Court in *Bostock* in furtherance of an egoistic Judicial putsch that began in *Windsor* and *Obergefell* unwisely injected non-secular meaning into Title VII and by extension into Title IX, which means that parts of either statute cannot be enforced until

---

259 F.3d 766, 771 (7th Cir. 2001). The "effect prong asks whether, irrespective of government's actual purpose," *Wallace v. Jaffree*, 4 72 U.S. 38, 56 n.42 (1985), the "symbolic union of church and state...is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. v. Ball*, 473 U.S. 373, 390 (1985); *see also Larkin v. Grendel's Den*, 459 U.S. 116, 126-27 (1982)(even the "mere appearance" of religious endorsement is prohibited). The Defendants creation and enforcement of policies that promote LGBTQ ideology amounts to a "legal weapon that no [Christian or non-observer of Secular Humanism] can obtain." *City of Boerne v. Flores*, 521 U.S. 507 (1997).

amended by Congress or until the Supreme Court reverses itself because part of Title VII no longer has a secular purpose.

115. The State Department and the US Ambassador to Russia knew or should have known that the LGBTQ cult is a denominational sect that is inseparably linked to the religion of Secular Humanism. The State Department and the US Ambassador to Russia knew that the gay pride rainbow flag is to the LGBTQ cult what the Cross is to Christianity, what the ten commandments icon is to Judeaism, what the star and crescent icon is to Islam. The State Department and the US Ambassador to Russia knew that by displaying the controversial gay pride rainbow colored flag on the front of the public building at the taxpayers expense, the Embassy would be conveying to all American citizens and the world that the favored religion of the United States is the religion of Secular Humanism, as advocated by the LGBTQ cult.[70]

116. The Plaintiffs - and millions of other Americans - believe that LGBTQ ideology and practices are deeply immoral. It follows that the Plaintiffs also believe that to enable acts of immorality is itself an act of immorality. Therefore, the Defendants are in violation of the Establishment Clause by creating and enforcing policies that promote LGBTQ ideology and pratices because it coercively causes the Plaintiffs to violate their own conscience by the simple act of paying taxes. It is an evil that the Establishment Clause does not allow.

## XI. THIRD CLAIM FOR RELIEF
### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(B) and U.S. Constitution, First Amendment, Free Speech

---

[70] The State Department and U.S. Ambassador to Russia not only disregarded procedural rules to convey a religious message that violated the Establishment Clause, they managed to make a mockery of the United States and themselves, as they clearly do not know the objective difference between right and wrong, real and fake, and secular and non-secular.

117. Plaintiffs repeat and incorporate by reference each allegation of the prior paragraphs as if fully set forth herein.

118. Under the APA, a court must "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

119. The Free Speech Clause of the First Amendment to the United States Constitution declares: "[The government] shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause prohibits the government from "chilling" a person's right to free expression.

120. By displaying the gay pride flag at the US Embaassy or by promoting sexual orientation orthodoxy or gender identity ideology through policies and regulations, the Plaintiffs' free speech is stifled because it makes them feel like non-existent citizens who are unwelcomed because they have the humility to believe in absolute truth and adrently oppose the anti-theism that the LGBTQ cult advocates.

121. The US Embassy's decision to display the gay pride flag and the government's decision to create and enforce policies that promote LGBTQ Secular Humanist doctrine have the purpose and effect of chilling constitutionally protected First Amendment activity.

122. The Plaintiffs - Christians - do not want the Embassy in Russia to display the Christian flag either. The Plaintiffs are asking that the Embassy remain neutral on issues of religion. The Plaintiffs want all citizens to have the fundamental right to make up their own minds as to whether or not the unproven truth claims of the LGBTQ Secular Humanist religion are plausible and helpful for human flourishing.

## XII.  DECLARATORY JUDGMENT

123. Plaintiffs re-allegeand re-aver all of the allegations contained in the previous paragraphs. Plaintiffs are entitled to declaratory judgment pursuant to 28 U.S.C. § 2201 and in accordance with Federal Rules of Civil Procedure Rule 57, that Defendants' actions are in violation of the Establishment Clause of the First Amendment and the Free Speech Clause of the First Amendment.

## XIII.  INJUNCTIVE RELIEF

124.  Plaintiffs re-allegeand re-aver all of the allegations contained in the previous paragraphs. Plaintiffs have suffered, and will continue to suffer, immediate and irreparable harm if the Defendants do not proactively disentangle the government with LGBTQ Secular Humanism.

125. Accordingly, temporary, preliminary, and permanent injunctive relief is hereby requested pursuant to Federal Rules of Civil Procedure, Rule 65.

## XIV. DAMAGES

126.  Plaintiffs re-allegeand re-aver all of the allegations contained in the previous paragraphs. As a result of the Defendants' violations of the Plaintiffs' constitutional rights, the Plaintiffs have suffered, or shall suffer, damages, including mental anguish and emotional distress.

127. In the alternative, Plaintiffs request nominal damages for the violation of their constitutional rights.

## XV.  INJUNCTION ELEMENTS

128. IRREPARABLE HARM:  Due to the Defendants' unlawful discrimination and disparate treatment of Plaintiffs, the Plaintiff has and will suffer and will continue to suffer

irreparable harm to their First Amendment constitutional rights as citizens who must interface with the non-secular displays on the challenged streets. The Plaintiff's injuries will be continuing and repeated each day the display is permitted to remain in violation of the United States Constitution. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); see also, e.g., *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235-36 (10th Cir. 2005) (noting presumption of irreparable harm where First Amendment rights are implicated). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Furthermore, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001).

129. <u>NO ADEQUATE LEGAL REMEDY</u>. The Plaintiffs have no adequate remedy at law because legal relief cannot remedy the denial of the Plaintiffs' First, and Fourteenth Amendment fundamental rights. Unless an injuncted is issue by order of this Court, Plaintiffs' constitutional rights will continue to be violated.

130. <u>BALANCE OF HARM</u>. The balance of harm as to irreparable injury to the Plaintiffs in comparison to the "harm" to Defendants weighs in Plaintiffs' favor. When a law that government actors or voters wish to enact is likely unconstitutional, their interests do not outweigh those of the Plaintiffs' in having their constitutional rights protected. *Awad v. Ziriax*, 670 F.3d at 1132 citing *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir. 1997).

131. <u>PUBLIC INTEREST</u>.  The public would benefit if the government would disentangle itself with the religion of Secular Humanism and actually obey the Establishment Clause of the First Amendment. The government's endorsement of Secular Humanism has injured millions of Americans. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d at 1132 quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). ( "While the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights." Id.; see also *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983) (noting "[t]he strong public interest in protecting First Amendment values"). The public would benefit if HHS clarified the 2020 Trump Rule, if Title VII, Title VIII, and Title IX had a secular purpose.   The public would benefit if the government would stop pretending that (1) ex-gay people and ex-trans people do not exist, that (2) the LGBTQ cult is not a cult that seeks to justify practices that are inconsistent with the safety and☐ peace of the Nation, that (3) LGBTQ ideology is medical science and not religion, and that (4) the government's endorsement of the LGBTQ cult is not an unprincipled ploy that guts the validity of the race-based civil rights movement and establishes Secular Humanism as the favored religion of the Nation at the expense of fundamental rights that are real.

## XVI. RELIEF

132. Plaintiffs re-allegeand re-aver all of the allegations contained in the previous paragraphs.

WHEREFORE, plaintiffs pray that the Court:

1.  Declares under 28 U.S.C. § 2201(a) and 5 U.S.C. § 706(a)-(b) through a declaratory judgment that the 2016 Obama Rule cannot be revived by HHS because it is unlawful and unconstitutional under the First Amendment Establishment Clause;

2.  Declares under 28 U.S.C. § 2201(a) and 5 U.S.C. § 706(a) that HHS's failure to include the Establishment Clause as the legal basis for replacing the 2016 Obama Rule with the 2020 Trump Rule makes the replacement arbitrary and capricious;

3.  Declares under 28 U.S.C. § 2201(a) and 5 U.S.C. § 706(b) that parts of  Title VII, Title VIII, and Title IX that refer to "sex" if sex means "sexual orientation" or "gender identity" lack a secular purpose and are barred from enforcement under by the Commission of Equal Opportunity and Employment, the Department of Education, and the Department Of Justice.

4.  Declares under 28 U.S.C. § 2201(a) and 5 U.S.C. § 706(a)-(b) that the State Department and U.S. Ambassador to Russia's decision to permanently display the gay pride flag beneath the American Flag on the outside of the U.S. Embassy violates the First Amendment Establishment Clause.

5. Issues a preliminary and permanent injunction that requires HHS to permanently set aside and vacate the 2016 Obama Rule - never reviving it again.

6. Issues a preliminary and permanent injunction that makes HHS clarify that the underlying legal basis for the 2020 Trump Rule is the Establishment Clause of the First Amendment.

7.  Issues a preliminary and permanent injunction that orders the Equal Employment Opportunity Commission not to enforce part of Title VII and orders the Department of Education to not enforce part of Title VIII regarding the term "sex," until Congress amends the Titles to

make them secular again or until the United States Supreme Court overrules its findings in

*Bostock* which has caused Secular Humanism to be elevated as the National religion by misusing

the Fourteenth Amendment in violation of the Establishment Clause.

8.  Issues a preliminary and permanent injunction that orders the Department of Justice to

not allow any state or federal agency to enforce any policy until it is resolved that the term "sex"

has a secular meaning.

9.  Issues a preliminary and permanent injunction that orders the State Department and

the U.S. Ambassador to Russia remove the LGBTQ display for violating the Establishment

Clause of the First Amendment.

10.  Awards reasonable attorneys' fees, costs, and expenses; and

11.  Awards any other further and additional relief the Court deems just and proper.

/s/Chris Sevier Esq./
DE FACTO ATTORNEYS GENERAL
4301 50th St.
Suite 300, #2009
Washington, DC 20816
(615) 500-4411
Xray Bravo Two Zero
ghostwarsmusic@gmail.com
www.humantraffickingpreventionact.com
www.stopsocialmediacensorshipact.com
www.stopguiltbyaccusationact.com
www.disentanglementact.com
www.lifeappropriationact.com

/s/Greg Quinlan/
CENTER FOR GARDEN STATE FAMILIES
gquinlan@gardenstatefamilies.org
8 Mary Louise Ave,
Ledgewood,
NJ 07852-9697
(513) 435-1125
(To be Represented Pro Hac Vice)

/s/Pastor Richard Penkoski/
WARRIORS FOR CHRIST
4301 50th St.
Suite 300, #2009
Washington, DC 20816
pastor@wfcchurch.org
(931) 881-8504
(To be Represented Pro Hac Vice)

/s/Reverend Joan Grace Harley/
4301 50th St.
Suite 300, #2009
Washington, DC 20816
stluke1313@aol.com
(301) 523 4659
(To be Represented Pro Hac Vice)

## VERIFICATION

The above statements are verified by the Plaintiffs under the penalty of perjury.

_____
**Chris Sevier**

_____
**Greg Quinlan**

_____
**Rich Penkoski**

_____
**Joan Grace Harley**